54  231
130a  29

GEORGE H. TILDEN, APPELLANT, v. ANDREW H. GREENE AND OTHERS, AS EXECUTORS AND TRUSTEES UNDER THE LAST WILL AND TESTAMENT OF SAMUEL J. TILDEN, DECEASED, AND THE TILDEN TRUST, RESPONDENTS, LAURA B. HAZ-ZARD AND OTHERS, AS EXECUTORS OF THE LAST WILL AND TESTAMENT OF MARY P. PELTON, DECEASED, APPELLANTS, AND LUCY F. TILDEN AND OTHERS, DEFENDANTS.

*Trust for educational and other purposes — when not an executory devise — when invalid because of uncertainty both in the subject and the object — it cannot be made definite by action of the trustee thereunder — when ineffectual as a power in trust — discretionary powers which cannot be exercised or enforced by the court or by any person other than the trustee named.*

A testator, by his will, provided as follows:
" 8. My said executors and trustees are directed to constitute the trusts for specific persons hereinafter more particularly described and defined. My said executors and trustees shall be trustees of the special trusts, by them so constituted, but the said trusts shall be distinct and separate from the general trust under this instrument; in their capacity of trustees of trusts for specific persons they shall have power to manage the several trusts, to collect the income thereof, and to apply the same as herein directed; to sell, in their discretion, the securities and to reinvest the proceeds thereof;" and further provided as follows:
"35. I request my said executors and trustees to obtain, as speedily as possible from the legislature, an act of incorporation of an institution, to be known as

the Tilden Trust, with capacity to establish and maintain a free library and reading-room in the city of New York, and to promote such scientific and educational objects as my said executors and trustees may more particularly designate. Such corporation shall have not less than five trustees, with power to fill vacancies in their number; and in case said institution shall be incorporated in a form and manner satisfactory to my said executors and trustees during the lifetime of the survivor of the two lives in being, upon which the trust of my general estate herein created is limited, to wit, the lives of Ruby S. Tilden and Susie Whittlesey, I hereby authorize my said executors and trustees to organize the said corporation, designate the first trustees thereof, and to convey to or to apply to the use of the same the rest, residue and remainder of all my real and personal estate, not specifically disposed of by this instrument, or so much thereof as they may deem expedient, but subject, nevertheless, to the special trusts herein directed to be constituted for particular persons, and to the obligations to make and keep good the said special trusts, provided that the said corporation shall be authorized by law to assume such obligation.

But in case such institution shall not be so incorporated during the lifetime of the survivor of the said Ruby S. Tilden and Susie Whittlesey; or if, for any cause or reason, my said executors and trustees shall deem it ʌexpedient to convey such rest, residue and remainder, or any part thereof, or to apply the same, or any part thereof, to the said institution, I authorize my said executors and trustees to apply the rest, residue and remainder of my property, real and personal, after making good the said special trusts herein directed to be constituted, or such portions thereof as they may not deem it expedient to apply to its use, to such charitable, educational and scientific purposes, as in the judgment of my said executors and trustees will render the said rest, residue and remainder of my property most widely and substantially beneficial to the interests of mankind."

*Held,* that the devise in question did not fulfill any of the conditions which pertained to an executory devise, as the portion of the estate which the Tilden Trust was to receive was uncertain; and it was, further, within the discretion of the executors, under the provisions of the will, to determine whether the Tilden Trust should take at all or not.

It was not, therefore, a case where the property vested under the will, subject to be divested by an exercise of the power of selection given by the will to the executors. That, on the contrary, if the executors did not act no estate was vested in the Tilden Trust.

That there was, therefore, uncertainty, both in the subject and in the object, which was fatal to an executory devise.

*Burrill* v. *Boardman* (43 N. Y., 254).

That if these provisions of the will were to be construed as a trust, they were so indefinite as not to be capable of being executed by a judicial decree and were invalid.

That, even if they should be construed to confer only a power upon the executors, they would be equally ineffective. That the discretion vested in the trustees could not be controlled or exercised by any other person or by the court, and thus no duty had been imposed upon them, the performance of which could be

compelled by a court of equity, which was the test of the validity in this case of such a power as a power in trust. (DANIELS, J., dissenting, holding that it was a power in trust of which the "execution or non-execution is made expressly to depend on the will of the grantee.")

That it was no answer to this objection that the provision in question might be made definite by the action of the executors; that, therefore, the circumstance that the Tilden Trust had been incorporated, and that the executors had attempted to convey to it the rest, residue and remainder of the testator's property, in no manner affected the question as to whether, at the death of Mr. Tilden, any trust was created, or any power in trust was conferred upon the executors and trustees, which authorized them to withhold the property from the legal representatives of the alleged donor.

That that portion of the thirty-fifth clause of the will which related to the Tilden Trust could not be considered or construed separately from the balance of the provisions of that clause disposing of the rest and residue of the estate in the event that the institution to be known as the "Tilden Trust" was not incorporated or was not given this residue of the estate by the executors. (DANIELS, J., dissenting.)

Schettler v. Smith (41 N. Y., 328) distinguished.

APPEAL by the plaintiff from a judgment entered, after a trial at the New York Special Term, in the office of the clerk of the county of New York, on the 18th day of January, 1889, adjudging that the provisions of the thirty-fifth clause of the last will and testament of Samuel J. Tilden, deceased, mentioned and set forth in the complaint, and providing for the incorporation of the Tilden Trust, and for the conveyance thereto by his executors and trustees of the rest, residue and remainder of his estate, are valid; and further adjudging that the Tilden Trust was vested, subject to the provisions and reservations in that behalf therein contained, under a certain deed of conveyance bearing date the 29th day of April, 1887, made by the executors and trustees of the Tilden Trust, with the title to all the rest, residue and remainder of the estate of the said Samuel J. Tilden, deceased, after the payment of his just debts and pecuniary and other legacies and devises contained in his said will, and further adjudging that by his last will and testament the said Samuel J. Tilden disposed of all his estate and left no property or estate descendible to his heirs or next of kin; and an appeal also by the defendants, Laura B. Hazzard, Laura B. Hazzard and William A. Hazzard, as executors of the last will and testament of Mary B. Pelton, from the same judgment.

*Delos McCurdy*, and *Joseph H. Choate* and *Smith M. Weed*, for the appellant.

*James C. Carter*, and *Daniel G. Rollins*, for the respondent.

VAN BRUNT, P. J.:

This action is brought for the construction of the will of Samuel J. Tilden, who died in August, 1886, leaving the said will, which had been executed in April, 1884. Mr. Tilden left him surviving, his only next of kin and heirs-at-law, one sister, two nephews, one of whom is the plaintiff in this action, and four nieces.

By his will, after naming the executors and trustees thereunder, and making provision for their compensation and as to the manner of the exercise of the powers to be conferred upon them, and for the appointment of the successor of such of his trustees as should die, resign or become incapacitated to act, he provides by the eighth clause thereof as follows:

*Eighth.* My said executors and trustees are directed to constitute the trusts for specific persons hereinafter more particularly described and defined. My said executors and trustees shall be trustees of the special trusts by them so constitued, but the said trusts shall be distinct and separate from the general trust under this instrument. In their capacity of trustees of trusts for specific persons they shall have power to manage the several trusts, to collect the income thereof, and to apply the same as herein directed, to sell in their discretion the securities, and to reinvest the proceeds thereof. The testator then, by the ninth, tenth. eleventh, twelfth, thirteenth, fourteenth, fifteenth, seventeenth, eighteenth, nineteenth, twentieth, twenty-second and twenty-third clauses, creates certain special trusts for the benefit of particular individuals therein named, each of which is separate and distinct, and each independent of the other, complete in itself and created by a separate paragraph in the will.

By the twenty-fifth clause the testator provides as follows:

*Twenty-fifth.* I direct my executors and trustees, in case any special trust hereby directed to be constituted shall fail in whole or in part by depreciation of securities, to make the same good out of my general estate, so long as the general trust to my executors and trustees shall continue; and in case the said executors and trustees shall convey any portion of that estate to a corporation

designated as the Tilden Trust, or shall vest the same in any trust or trusts for charitable purposes, to do so on the express condition that the said conveyance shall be subject to the obligations to make good the funds devoted to the said special trusts, and shall exact from the grantee in every such case an acknowledgment of such obligation and agreement to fulfill the same. This provision is made subject to the condition that the corporation shall be duly authorized by law, by a special act or otherwise, to accept the grant, subject to the obligations herein directed to be imposed upon or assumed by the said corporation. I also direct my said executors and trustees to obey such instructions as I may hereafter give to them in respect to the allotment or selection of securities for the said special trusts, or any of them.

By the twenty-sixth clause he provides as follows : .

*Twenty-sixth.* I hereby authorize and direct my executors and trustees, during the continuance of the trust of my general estate, to apply any surplus income to or towards the several special trusts hereby directed to be constituted, in the same manner as they might apply the principal of my said estate to the said purposes.·

By the twenty-seventh and twenty-eighth clauses he gives certain annuities. By the twenty-ninth clause he gives directions as to the management of the securities originally purchssed for, or set apart for the special trusts, and by the thirtieth clause he also gives an annuity. By the thirty-first clause he gives certain specific legacies. By the thirty-second clause he directs his executors and trustees to apply $10,000, or such part of it as may be necessary, according to such instructions as he might thereafter give to them, from time to time, in writing or verbally.

By the thirty-third clause he provides as follows :

*Thirty-third.* I authorize my executors and trustees to cause the establishment of a library and free reading-room in my native town of New Lebanon, in the manner following, that is to say : They shall obtain title to the land upon which the building stands which was erected by my brother, Henry A. Tilden, and which has been occupied by a school, buying in the mortgage on the same, amounting to about $15,000, and, if necessary, obtaining releases from the heirs of my brother, Henry A. Tilden, from my sister, Mary B. Pelton, or her heirs, and from Mrs. Lucy F. Tilden.

They shall vest the title in a corporation, if a charter shall be granted on their application to the legislature, or a corporation can be formed under any general law. My said executors and trustees are hereby authorized to require, if needful, proper conveyances to be executed by the heirs of the said Henry A. Tilden, by Mary B. Pelton or her heirs, and by Lucy F. Tilden, as condition precedent to the payment of the legacies herein given to them, respectively. They shall also convey to the corporation, if one be created, any interest which I may have in the said premises.

My executors and trustees are authorized to expend for the creation and equipment, and to invest as a permanent fund to maintain the said library and reading-room, the sum of $65,000, and any further sum, not exceeding $35,000, which I may, in writing, instruct my said executors and trustees to apply to those objects. They are also authorized to use the said building and endowment hereby provided in part for a school for the training of girls, if they find the same expedient, in connection with the free library and reading-room.

By the thirty-fourth clause he provides as follows:

*Thirty-fourth.* I hereby authorize my said executors and trustees to appropriate out of my estate, in such manner as they may deem most expedient, the sum of $50,000 toward the establishment of a library and free reading-room in the city of Yonkers, and such further sum, not exceeding $50,000, as I may hereafter instruct my said executors and trustees to apply to that object. My said executors and trustees are requested to apply to the legislature for a special charter to enable them to carry out this provision, or to form a corporation under any general law which, in their judgment, shall be most desirable.

By the thirty-fifth clause he provides as follows:

*Thirty-fifth.* I request my said executors and trustees to obtain, as speedy as possible, from the legislature an act of incorporation of an institution to be known as the Tilden Trust, with capacity to establish and maintain a free library and reading-room in the city of New York, and to promote such scientific and educational objects as my said executors and trustees may more particularly designate. Such corporation shall have not less than five trustees, with power to fill vacancies in their number, and in case said institu-

tion shall be incorporated in a form and manner satisfactory to my said executors and trustees during the lifetime of the survivor of the two lives in being, upon which the trust of my general estate herein created is limited, to wit, the lives of Ruby S. Tilden and Susie Whittlesey, I hereby authorize my said executors and trustees to organize the said corporation, designate the first trustees thereof, and to convey to or to apply to the use of the same the rest, residue and remainder of all my real and personal estate not specifically disposed of by this instrument, or so much thereof as they may deem expedient, but subject, nevertheless, to the special trusts herein directed to be constituted for particular persons, and to the obligations to make and keep good the said special trusts, provided that the said corporation shall be authorized by law to assume such obligation.

But in case such institution shall not be so incorporated during the lifetime of the survivors of the said Ruby S. Tilden and Susie Whittlesey, or if, for any cause or reason, my said executors and trustees shall deem it inexpedient to convey said rest, residue and remainder, or any part thereof, or to apply the same, or any part thereof, to the said institution, I authorize my said executors and trustees to apply the rest, residue and remainder of my property, real and personal, after making good the said special trusts herein directed to be constituted, or such portions thereof as they may not deem it expedient to apply to its use, to such charitable, educational and scientific purposes as, in the judgment of my said executors and trustees, will render the said rest, residue and remainder of my property most widely and substantially beneficial to the interests of mankind; and by the thirty-sixth clause he authorizes his executors and trustees to reserve any books which the testator might have from any disposition made by his will, and authorizes them to dispose of the same in such manner as in their judgment would have been most agreeable to him.

By the thirty-seventh clause he provides as follows:

*Thirty-seventh.* In case, at any time during the trust embracing my general estate, any interest in any special trust hereby directed to be constituted shall lapse, or no disposition of such interest contained in this instrument shall be effectual to finally dispose of the same, such interest shall go to my said executors and trustees, to be dis-

posed of under the provisions of this will; or, if the said general trust shall have ceased, but a corporation, designated as the Tilden Trust, shall be in operation, such interest shall go to the said corporation.

And by the thirty-ninth clause he devises all the rest, residue and remainder of his estate as follows:

*Thirty-ninth.* I hereby devise and bequeath to my said executors and trustees, and to their successors in the trust hereby created, and to the survivors and survivor of them, all the rest, residue and remainder of all the property, real and personal, of whatever name or nature, and wheresoever situated, of which I may be seized or possessed, or to which I may be entitled at the time of my decease, which may remain after instituting the several trusts for the benefit of specific persons; and after making provision for the specific bequests and objects as herein directed, to have and to hold the same unto my said executors and trustees, and to their successors in the trust hereby created, and the survivors and survivor of them in trust, to possess, hold, manage and take care of the same during a period not exceeding two lives in being, that is to say, the lives of my niece, Ruby S. Tilden, and my grand-niece, Susie Whittlesey, and until the decease of the survivor of the said two persons, and after deducting all necessary and proper expenses to apply the same, and the proceeds thereof, to the objects and purposes mentioned in this my will.

The questions presented upon this appeal arise in reference to the validity of the general trust spoken of in the eighth clause of the will, and which is attempted to be established by the thirty-fifth clause above cited. In the consideration of this question it is, of course, necessary to bear in mind the cardinal principles which are to govern courts in the construction of a will, and they have been so repeatedly laid down that it is not necessary to cite authorities in their support because they have become axioms. It is the duty of the court to give such a construction to the provisions of a will as will effectuate the general intent of the testator, as derived from an examination of the whole instrument, even though it may be necessary to transpose words and phrases, or even to insert or leave out a provision, if it be necessary to do so, in order to accomplish the clearly expressed intention of the testator.

There is also another rule of construction which provides that,

where two or more meanings are presented for consideration, one of which will hold a devise as void, and the other of which will enable the will of the testator to be operative, we ought not, without absolute necessity, to adopt the construction which necessitates the holding of the devise as void. And, also, where several trusts are contained in the will, some of which are legal and others illegal, if they are so connected together as to constitute an entire scheme, so that the presumed wishes of the testator would be defeated if one portion were held legal and other portions illegal, or if manifest injustice would result to the beneficiaries of some of them by holding one portion legal and the others illegal, then all the trusts must be held to be illegal and must fall together. But where several trusts are created independent of each other, each complete in itself, and the legal can be separated from the illegal, and be upheld without doing injustice to or defeating what the testator might, in the emergency, be presumed to wish, the illegal trusts may be cut off and the legal ones permitted to stand, and thus the intention of the testator be effectuated so far as the law will permit.

Under the last rule of construction the respondents claim that the latter part of the thirty-fifth clause may be cut off, and that the clause in said section, referring to the corporation to be called the Tilden Trust, is a separate, distinct, independent trust, which may be held valid, although the other trust mentioned in the clause in question should be held to be invalid. And this is the main contention which has been presented by the briefs of counsel, and it is upon this ground that the learned judge below sustained the devise in question

It is claimed that the provisions of the will, in respect to which this controversy arises, either constitute a trust in the trustees to be executed for the benefit of the Tilden Trust, or it conferred upon said trustees a power in trust, or it was an executory devise, and the learned judge below held the provision in the will to be of the latter character, and that it was a devise similar to that which was contained in the will under consideration in the case of *Burrill* v. *Boardman* (43 N. Y., 254). In this we think the learned judge fell into an error in overlooking the true nature of an executory devise under our statutes, and the difference between the provisions of the will in question, and the one under consideration in *Burrill* v.

*Boardman.* What was understood as an executory devise prior to our Revised Statutes was, however, abolished by their adoption, and all distinctions between contingent remainders and executory devises was by them abolished, both coming under the definition of estates in expectancy. Estates in expectancy are divided into estates commencing at a future day, denominated future estates, and reversions. A future estate is defined to be an estate limited to commence in possession at a future day, either without the intervention of a precedent estate or on the determination, by lapse of time or otherwise, of a precedent estate created at the same time. Future estates are further declared to be either vested or contingent. They are contingent whilst the person to whom or the event upon which they are limited to take effect remains uncertain. And then we have the further provision that expectant estates are descendible, devisable and alienable in the same manner as estates in possession. It is clear, therefore, in the case of all expectant estates, when the contingency arises upon which they are limited to take effect, that they vest by force of the instrument creating them. By an executory devise, therefore, or a gift in the nature of an executory devise, the expectant takes a vested right to the property, and this right cannot be defeated or diminished in any manner by any person. In other words, in the instrument creating the estate, the subject and object of the devise must be ascertained and certain.

It is clear, upon a reading of the will of the testator, that it was not his intention to create any such estate. In the first place, the beneficiaries under the will take nothing by virtue of the provisions of the will itself. The estate is attempted to be vested in the trustees (the evidence of which we will consider hereafter), and it is by force of their action that the estate is to become vested in the beneficiaries.

It is true that it is claimed, upon the part of the respondent, that the action of the trustees or executors under the will derives its validity from the powers conferred by the will, and that, therefore, it is to be deemed as the action of the testator. But an estate created under such conditions is provided for by another part of the Revised Statutes, and does not come within the definition of an expectant estate as contained in the provisions of the statute to which reference has been had. In the case of *Burrill* v. *Boardman* it was held that

the moment the corporation came into being the estate, which had been devised to the executors in trust to be administered by this corporation upon its formation, vested in the corporation; that it required no action upon the part of the executors, and that it was entirely similar to the case of a devise to a person not *in esse* at the time of the death of the testator but who should be brought into being within the time limited for the suspension of the power of the alienation of estates. The court says: " If, therefore, the limitation to the incorporated hospital is valid as a contingent executory bequest, * * * neither their appointment (the trustees) nor their title was essential to the validity of the contingent limitation. The law would compel the application of the property to the purposes of the lawful bequest, wherever it might be found," and cites with approval the proposition of Lord Chief Justice Wilmot, who says: " So in this case the testator does not declare his intention to give to a person not *in esse*, but is actually giving directions for the creation of that person; and there is no difference between the cases, but that one is an executory trust for a natural person to be created and the other is a political person to be created."

It is also claimed, by the learned counsel for the respondent, that the precise legal description of the disposition made in favor of the ~Tilden Trust is that it is an executory devise and bequest; and after calling attention to the distinction between executory devises and contingent remainders, as they existed before our Revised Statutes, he states that the executory bequest and devise in the present case is made subject to two conditions: (1.) That the corporate body described as the donee shall come into existence within the prescribed limits. (2.) That the executors and trustees shall not deem it inexpedient to endow the institution. This statement assumes two things which do not exist, as we shall attempt presently to show, viz., that there is a donee who takes under the will, and that such donee takes by force of the will alone unless the executors and trustees named in the will should deem it inexpedient that any such donee should take. In other words, that there is a donee named in the will who would take upon coming into existence without any action whatever upon the part of the executors and trustees. And the learned counsel further states that this was declared to be the nature of a precisely similar gift in

*Burrill* v. *Boardman* (43 N. Y., 254). That was made subject to one only of the above conditions, viz., the first. But that involved the *discretion* of the persons named. The gift could not take effect unless the charter was a *liberal* one, and the discretion to judge of this would appear to have been lodged with the person named as trustee. In what part of the devise this discretion appears to be lodged in the person named as trustee we have been unable to discover. Nothing is said in the will about the trustee having any discretion, and the court expressly held that the trustee had no discretion, but that the estate devised vested in the corporation as soon as it came into being, and that neither the appointment of the trustees nor their title was essential to the validity of the contingent limitation, and the bequest was held, because of these features, to be in the nature of a contingent executory bequest. Whether the charter of the corporation was such an one as entitled it to take, in the case of *Burrill* v. *Boardman*, was clearly a question for the court to determine, and one with which the executors, under the will, had nothing to do. If it could take at all it took the whole of the bequest. In the case at bar the Tilden Trust took nothing upon its incorporation, the appointment of the trustees was absolutely essential, and they were to convey to the corporation if they deemed it expedient, and only so much of the trust estate as they deemed expedient. Such is the express, plain, unequivocal language of the will. It seems, therefore, that the devise in question does not fulfill any of the conditions which pertain to an executory devise, as the portion of the estate which the Tilden Trust was to receive was uncertain. And it was further within the discretion of the executors to determine whether the Tilden Trust should benefit at all or not by the provisions of the will.

It is not the case, therefore, of a vesting under the will, and a divesting by the exercise of the power of selection given to the executors by the will; on the contrary, if the executors do not act, nothing vests. There was, therefore, uncertainty both in subject and in object, which is fatal to an executory devise. The provisions of the will in question established a trust in the executors and trustees therein named or conferred upon them a special power in trust. And it seems to be immaterial to the result which must necessarily follow, whether it is to be construed as the one or the other.

It is evident, upon considering the provisions of the will, that it was not the intention of the testator to confer upon his executors and trustees a power in trust, because he devises to them the estate and commits its control, care and management to them, and, impliedly, he provides for the collection of the income of the whole estate by them, of that which the trustees were to set apart as constituting the several trusts, as well as of the residue which might remain after the instituting of those trusts, the payment of the legacies provided for in the will, and the doing of the other things which were distinct and separate from the general trusts mentioned in the eighth clause, and which he called in said clause the "general trust."

A very significant indication of this idea of the testator is contained in the twenty-sixth clause, where he authorizes and directs his executors and trustees "during the continuance of the trust of my general estate (evidently referring to that which he had mentioned in the eighth clause as the general trust) to apply any surplus income to or towards the several special trusts hereby directed to be constituted, in the same manner as they might apply the principal of my said estate to the said purpose." He, therefore, intended that the trustees should be invested with the ownership of the property which composed the residue of his estate until they should divest themselves of such ownership by, pursuant to the directions contained in the thirty-fifth clause, conveying and applying the same to the charitable uses therein mentioned, as they were, as already stated, to have the care and management thereof until such time; and they evidently were expected to collect the income, because there are directions as to the application of the surplus income arising therefrom, prior to such application, which they could not control had they not the power of collection.

Therefore, as far as it was possible for the testator to signify his intentions, he signified his intention that his executors and trustees should be vested with the title of this residue until they divested themselves of the title in carrying into effect the "general trust" which he spoke of in the eighth clause, and in the twenty-sixth clause, and for the instituting of which he made provisions in the thirty-fifth clause.

Using the words of Justice WRIGHT, in *Levy* v. *Levy* (33 N. Y., 107): "If there is a single postulate of the common law estab-

lished by an unbroken line of decisions, it is that a trust, without a certain beneficiary who can claim its enforcement, is void, whether good or bad, wise or unwise."

Therefore, if these provisions of the will are to be construed as a trust, and they are so indefinite as to be incapable of being executed by a judicial decree, they are bad.

The same conclusion must follow if it is held that only a power was conferred upon the executors, although such a construction would be antagonistic to the plainly expressed intention of the testator.

It is claimed, upon the part of the respondent, that because a testator might give by his will a legacy to such person or persons as A. B. shall designate, that, therefore, conceding that there is no certain beneficiary who is entitled to claim the enforcement of the provisions of the thirty-fifth clause of the will in question, the gift is a valid one. It may be conceded that if the gift had been in that form it would have been perfectly valid. It would have been merely conferring a power upon the executors which they would have had the right to exercise or not at their own pleasure. The estate would have descended to the heirs and next of kin of the testator, subject to the execution of the power. It would have come under the definition of a general power, which is defined to be one which authorizes the alienation of lands embraced in the power to any alienee whatever.

This, however, was not the power conferred upon the executors and trustees of Mr. Tilden by the terms of his will. By the terms of his will Mr. Tilden directed his executors, or, if you please, empowered his executors to dispose of the residue of his estate to a person, or class of persons, other than the grantee of the power. This, under our statutes, is defined to be a special power in trust; and if the trust, which was created by the testator, fall within the provisions of section 58 (1 Revised Statutes, 729), and should be held to be valid as a power in trust, it is a special power in trust, as defined in the chapter of the Revised Statutes relating to powers.

It is provided by section 96 (1 Revised Statutes, 734) that every trust power, unless its execution or non-execution is made *expressly* to depend upon the will of the grantee, is imperative and imposes a duty on the grantee, the performance of which may be compelled

in equity for the benefit of the parties interested. By section 97 it is provided that a trust power does not cease to be imperative where the grantee has the right to select any and exclude others of the persons designated as the objects of the trust.

Now, it is clear that whether a trust has devolved upon these executors or simply a power, it is a trust or a power which they are bound to execute, and that it was not intended that it should depend upon the will of the grantees of the power as to whether they would execute it or not. Therefore, in the contemplation of the statute, where a special power in trust is created, the same rule applies in reference to the beneficiaries of the power that applies to the case of the beneficiary of a trust, namely, that such beneficiary shall be so definite as that his rights may be enforced by a judicial decree, unless the execution of the power is made expressly to depend upon the will of the grantee, which is not claimed in the case at bar.

If there was any doubt in regard to this proposition, reference to sections 100 and 101 of the same statute (p. 734) would seem to remove the same. Section 100 provides that if the trustee of a power, with a right of selection, shall die leaving the power unexecuted, its execution shall be decreed, in equity, for the benefit equally of all the persons designated as objects of the trust; and section 101 provides that where a power in trust is created by the will, and the testator has omitted to designate by whom the power is to be exercised, its execution shall devolve upon the Court of Chancery. Therefore, if this devise is to be construed as a special power in trust, it must be both, as to subject and object, of so definite a character that the Court of Chancery might execute it should the trustees of the power fail to perform their duty; and hence in laying down the rules which are to govern gifts to charitable uses in the adjudicated cases no distinction, point or question has been made as to whether such devises and bequests were trusts or powers in trust, the same rules in the respects stated being applicable to both. The executors of Mr. Tilden are the trustees of a trust created in respect to the rest, residue and remainder of his property mentioned in the will, or they are the grantees of a special power in trust in respect to such rest, residue and remainder; and whether the executors be trustees of a trust, or

grantees of a power, the gift under consideration being to a charitable use, to be held valid it must be sufficiently definite to be capable of enforcement by a judicial decree. (*Powers* v. *Cassidy*, 79 N. Y., 602; *Prichard* v. *Thompson*, 95 id., 76; *Holland* v. *Alcock*, 108 id., 312.)

The learned judge in the court below was of the opinion that the thirty-fifth article contained two distinct and separate alternative gifts, the first and primary gift being to and for the benefit of the Tilden Trust, and the secondary and ulterior gift (in the event of the primary gift not taking effect) for such charitable, educational and scientific purposes as in the judgment of the trustees would render the rest, residue and remainder of the testator's property most widely and substantially beneficial to the interests of mankind. Conceding that what he calls the secondary and ulterior gift would be void, he claims, that it was the intention of the testator to make the Tilden Trust the primary object of his bounty with respect to the rest, residue and remainder of his estate, and that it was separate from and independent of such void ulterior trust; and applying the principle that where the general intent of the testator may be sustained by cutting off a void trust which is separable from other valid trusts, in a case where the trust which is valid is independent of the other dispositions of the will, and subordinate to them, and is not an essential part of the general scheme, he disposes of the question upon the theory that the last clause of the thirty-fifth section constitutes a trust which is separable from that which is created by the first clause, that it is independent of it and was not an essential part of the testator's general scheme.

The question presented under this view of the case (namely, that the provisions for the Tilden Trust are a separate and independent gift) is, therefore, does the gift under which the Tilden Trust claims fulfill the conditions heretofore named? Let us turn for a moment to the devise as contained in the will. The testator, after requesting (which request, it is conceded, amounts to a command) his executors and trustees to obtain a charter for an institution to be known as the Tilden Trust, authorizes them in case such institution should be incorporated in a form and manner satisfactory to them within the time limited by the will to organize the corporation, designate the first trustees thereof, " and to convey to or apply to the use of the same the rest, residue and remainder of all my real

and personal estate not specifically disposed of by this instrument or so much thereof as they may deem expedient." In other words, in case of the satisfactory incorporation of the Tilden Trust, he authorizes his executors and trustees to convey to or apply to the use of this corporation so much of the rest, residue and remainder of his property as they may deem expedient. This clause cannot be considered, as is claimed by the counsel for the respondent, to be a direction by the testator to his executors and trustees to endow this institution unless they shall deem it inexpedient to do so without a perversion of the whole tenor of the language of the clause, as it was the clear intention of the testator not to confer upon the Tilden Trust, even after incorporation, any power to claim anything from the hands of these executors and trustees as a matter of right.

The whole power of the corporation to take depended upon the approval by the executors and trustees of the form and manner of its incorporation, and upon their determination that it was expedient, in view of all the facts known to them, and of all the powers conferred upon them, to endow the corporation; the amount of such endowment being in their absolute discretion. Therefore, without action upon the part of the executors the Tilden Trust could not possibly claim anything; and its power to claim an endowment is not taken away, only in case the trustees should determine that it was inexpedient to endow it, but its very power to take anything depends upon the affirmative judgment of the executors and trustees that it is expedient that it should be endowed with some amount, which must be determined by the trustees before it could be applied to the use of the corporation. Such being the condition of the power conferred, it was incapable of being executed by a judicial decree, because there were no parties interested under the power itself, and no fund set apart which, even had the party been definite, such party could claim. Whether there would ever be such parties or such funds depends entirely upon the affirmative action of the executors and trustees.

Hence, if the executors or trustees, after all the conditions precedent had been fulfilled had died, resigned or became incapacitated from acting, prior to the arrival of the time when they would be entitled to act, considering the first clause of the paragraph by itself, no court could have decreed the execution of the trust or

power, and the will of the testator would be absolutely defeated, his heirs and next of kin taking the estate, contrary to his expressed intention, a result which can never happen, as we have seen, in those cases where a valid trust, or power in trust, has been created.

If the provisions of the will relating to this rest, residue and remainder are to be deemed a trust, therefore, they are void; and if they are to be deemed to confer simply a power in trust upon the executors and trustees, they are equally invalid for indefiniteness, unless the execution or non-execution of the power was made expressly to depend upon the will of the grantee of the power.

It is not claimed by anybody that it was the intention of the testator to make the execution or non-execution depend upon the will of his executors. The testator did not intend that, under any circumstances, his heirs or next of kin should get from his estate anything more than the provision which he had made for them therein.

This is plainly evident from the reading of the will, and, therefore, he did not intend that such heirs or next of kin should receive any portion of the rest, residue and remainder; neither did he intend that under every circumstance, even if incorporated, the Tilden Trust should receive, as matter of right, the whole or any part of this rest, residue and remainder, but he did intend that it should be devoted to some charitable use, to the Tilden Trust if incorporated, and if his executors deemed it expedient, but, in any event, to some charitable use, and hence the last clause in the paragraph of the will under consideration.

" But in case such institution shall not be so incorporated during the lifetime of the survivors of the said Ruby S. Tilden and Susie Whittlesey, or if for any cause or reason my said executors and trustees shall deem it inexpedient to convey said rest, residue and remainder, or any part thereof, or to apply the same, or any part thereof, to the said institution, I authorize my said executors and trustees to apply the rest, residue and remainder of my property, real and personal, after making good the said special trusts herein directed to be constituted, or such portions thereof as they may not deem it expedient to apply to its use, to such charitable, educational and scientific purposes as in the judgment of my said executors and

trustees will render the said rest, residue and remainder of my property most widely and substantially beneficial to the interests of mankind."

These considerations show not only that the testator did not intend that the execution or non-execution of the power (if it is to be deemed a power) should depend upon the will of the grantee, but also how impossible it is to separate that part of the thirty-fifth clause relating to the Tilden Trust from the latter half of the paragraph relating to the application of the rest, residue and remainder to other charitable uses without defeating the plain intention of the testator. The execution of the power (if it is a power), not expressly depending upon the will of the grantee, and if it is (even if the final clause of the thirty-fifth paragraph be cut off) so indefinite that it could not be executed by a judicial decree, it is invalid. The trustees have full discretion both as to the legal entity to be called into being and as to the application of the estate to its use, if called into being. This power or authority thus conferred could not be executed by judicial decree, because unfortunately there is no fund or estate which, by the will, *must* be given to any person or class of persons. There is an estate which *may* be given in whole or in part to one possible institution, or which may be applied to indefinite " purposes."

Under the Revised Statutes (vol. 1, § 99, p. 734) there may be a power of selection and exclusion with regard to the designated objects of the testator's bounty, and still the trust power does not cease to be imperative. But there both the fund and the designated objects are specific. The trustee of the power must distribute the entire fund between such designated objects, selecting and excluding as he pleases, but exhausting the fund upon lawfully designated beneficiaries. A court of equity can and will enforce the performance of that duty, and the only variation in its execution, in case of the death of the grantee of the power, leaving the power unexecuted, is that the power of selection ceases and equity decrees an equal distribution among the objects as prescribed by statute. How could a court of equity compel the performance of the duty here devolving upon these trustees; how could the court perform such duty, in case of the death of such trustees, before they had

had an opportunity to perform? The indefinite and uncrystallized "purposes" could not well file a bill. The corporate institution might, but it could not interplead the "purposes." If it filed a bill alone the answer would be, not that the trustees have a power of selection and exclusion with regard to a class made up of the corporation and the "purposes" (which power they have, as far as they could, exercised in favor of the corporation), but that, as *to the corporation treated singly*, they have an absolute discretion. This discretion is proved doubly, for it is contained, first, in the power to apply to the use of the corporation so much of the estate as the trustees may deem expedient; and, second, the further power to do something else with it, in whole or in part, if they deem it inexpedient to give it to the corporation in whole or in part. As has already been suggested, what, it may be asked, would become of this residue if the executors had never qualified or had died before the execution of the power? Could the Supreme Court take upon itself the exercise of this discretion; decide whether the corporation was incorporated in manner and form satisfactory to the trustees, and whether it should take the whole or only a part, and, if so, what part? It is plain that the discretion which is vested in these trustees cannot be controlled, and cannot be exercised, by any other person or court, and thus no duty has been imposed upon them, the performance of which can be compelled by a court of equity; and this is the test of the validity of such a power as a power in trust. The radical vice of the entire provision seems to have arisen from the testator's unwillingness to *confer any enforceable rights upon any qualified person or body.* He seems to have had absolute confidence in his executors, but in no one else, confidence (it is to be regretted) to the exclusion of that necessary definiteness for which educational or trust discretion cannot be substituted under our system of law.

It is no answer that the clause may be made definite by the action of the executors. The question must be determined as of the time of the death of the testator. A trustee cannot make that valid which is invalid, nor can he invalidate that which is valid. If the trust or power is valid, he can be compelled to execute it, if invalid he stands as to the property not disposed of by the will as trustee for the heirs and next of kin, and an equitable interest is vested in

them immediately upon the death of the testator, subject only to the payment of his debts and the expenses of administration.

In the case of *Holland* v. *Alcock*, it is said where a trust is attempted to be created without any beneficiary entitled to demand its enforcement, the trustee would, if the trust property were in his possession, have the power to hold it to his own use without accountability to anyone, and contrary to the intention of the testator, but for the provision that in such a case a resulting trust attaches in favor of whoever would, but for the alleged trust, be entitled to the property. This equitable title cannot on any sound principle be made to depend upon the exercise by the trustee of an election whether he will or will not execute the alleged trust. In such a case there is no trust in the sense in which the term is used in jurisprudence. " The existence of a valid trust capable of enforcement is consequently essential to enable one, claiming to hold as trustee, to withhold the property from the legal representatives of the alleged donor. A merely nominal trust in the performance of which no ascertainable person has any interest, and which is to be performed or not as the person to whom the money is given thinks fit, has never been held to be sufficient for that purpose." Therefore, the circumstance that the Tilden Trust has been incorporated, and that the executors have attempted to convey to it the rest, residue and remainder of the testator's property in no manner affects the question as to whether at the death of Mr. Tilden any trust was created or any power in trust was conferred upon these executors and trustees which authorized them to withhold the property from the legal representatives of the alleged donor.

But it seems to us that it is impossible to hold that that portion of the thirty-fifth clause which relates to the Tilden Trust can be considered and construed separately from the balance of the paragraph. In the first place an inspection of the will shows that the testator has been particular to distinguish throughout between the special trusts and the " general trust." He has created these special trusts by separate and distinct paragraphs. He has by the eighth clause declared that such special trusts shall be distinct and separate from the " general trust " under the will, the general trust evidently meaning the one single undivided trust to charitable uses which is provided for by the thirty-fifth clause of the will.

Again, by the twenty-sixth clause of the will, he speaks of the power of his trustees during the continuance of the trust — not the trusts, but the trust — of his general estate to apply any surplus income to or towards the several special trusts by the will directed to be constituted, showing again in language as significant as could be used that the testator had in his mind a single devise in trust to charitable uses and that he did not intend or did not suppose that there were various independent separate devises to primary, secondary or tertiary charitable uses, but that there was one devise and one trust for charitable uses, his executors having the power of selection. Undoubtedly he desired his executors to give the preference to the Tilden Trust, but that is as far as he went.

Again, in the thirty-ninth clause he speaks of the rest, residue and remainder of his property which forms the subject of the provisions contained in the thirty-fifth clause. He says : " I hereby devise and bequeath to my said executors and trustees and to their successors in *the trust* hereby created, and to the survivors and survivor of them, all the rest, residue and remainder of all the property, etc., which may remain after instituting the several trusts for the benefit of specific persons and after making provision for the specific bequests and objects as herein directed, to have and to hold the same," etc.

If it had been the supposition of the testator that he had made a specific bequest to the Tilden Trust by which, upon its satisfactory incorporation, it would have become invested with the title to this rest, residue and remainder, is it possible that he could have made use of any such language ? In that case there would have been no rest, residue and remainder which he could have devised to his trustees. He there makes a distinction, plain and pointed, between the devises to specific persons (and by the word " persons " he evidently meant to include corporations, for by the thirty-fourth clause he makes a specific devise to a corporation to be called into being, and which devise is to be taken out before · the rest, residue and remainder can be ascertained) and the trust created by the will — in some places called the " general trust " — which is to be carried into effect according to the provisions of the thirty-fifth clause of the will.

Furthermore, it is evident that it was not the intention of the testator, as has already been stated, that the only charitable use to

which his executors and trustees should have the right to devote this property should be the Tilden Trust. It is conceded that, under the language of the will, the executors had the power to determine the amount in which, if any, the Tilden Trust should be endowed. Now, what were the circumstances under which the testator intended that his executors and trustees should come to a determination upon this question.

Was it that they were bound to convey the whole of the rest, residue and remainder of his estate to the Tilden Trust, or permit his heirs and next of kin to receive it, who he had declared should not have any other portion of his estate than such as he had provided expressly in the will? Clearly not. That was not the question which was to determine the expediency of the endowment of the Tilden Trust. If such had been the intention of the testator, it is clear he would not have left anything in the discretion of his executors, but he would have devised the rest, residue and remainder to this corporation when it should have been called into being, as was done in the case of *Burrill* v. *Boardman,* without the necessity of any intervention on the part of his executors and trustees. But he did not do this. He expressly confers the power upon his executors to withhold from the Tilden Trust unless they deemed it expedient that it should receive.

What was to be done with it in case they did withhold? What were the considerations which were to enter into the question of the expediency of withholding? What the circumstances which were to enter into the consideration of the quantity or amount of the endowment; whether the Tilden Trust should receive the whole or so much thereof as they might deem expedient?

The testator intended that his executors and trustees, in determining this question, should have in mind the fact that if they withheld the whole or any part of this rest, residue and remainder from the Tilden Trust they could still carry out his intention to devote this rest, residue and remainder to charitable uses by giving it to other charities. This was a circumstance which these executors and trustees had a right to have in mind in determining the question whether or not they should endow the Tilden Trust with the whole or any part of the testator's estate.

It was not that in case they did not endow the Tilden Trust,

that, therefore, the heirs and next of kin would get the property which the testator did not intend; but it was that if they did not give it to this charitable use the testator empowered them to give it to others. And from the character of the will and the character of the trusts in other respects reposed in the executors, it is to be assumed — it must necessarily be assumed — that these executors were the confidential friends of the testator, were acquainted with his wishes and he had supreme reliance upon them that they would carry out his wishes to the fullest extent.

How can it be said, in this condition of affairs, that the last clause of the thirty-fifth paragraph is independent of and has no relation to the first? By such a construction the trustees of this will are placed in an entirely different position from that which the testator intended. As already stated, he did not intend that his executors should be compelled to choose between the Tilden Trust and his heirs and next of kin. But the declared and expressed intention, in language as strong and as pertinent as could be used, is that they shall choose between the Tilden Trust and such other charitable, educational and scientific purposes as in their judgment would render the rest, residue and remainder of his property most widely and substantially beneficial to the interests of mankind. To further illustrate this view, it is only necessary to call attention to the fact that, even after the corporation called the Tilden Trust is called into existence at the request of his executors and trustees, and they have approved of the manner and form of its incorporation, he yet does not require them to convey or apply anything to the use of this corporation.

It is admitted, upon the part of the respondents, that for any cause happening subsequent to the incorporation, they would have had the right to refuse to endow the Tilden Trust, but they insist that such refusal must result from a reason not connected with the wisdom of this form of charity; that that matter the testator had determined for himself. But where is to be found this limitation of their discretion we cannot conceive. Who is to call for the cause or reason; to whose judgment are the executors to submit this cause or reason? To their own and nobody else's. And whether that cause or reason depends upon the form of the charity, or upon something which has occurred since the incorporation, no matter what, we see

no limitation of the right of the trustees to determine whether they will or will not endow the Tilden Trust.

It may be true that the testator intended that the Tilden Trust should have a preference in the matter of endowment, and that is undoubtedly the fact. But he is scrupulously careful to commit the whole question, notwithstanding his solicitude, into the hands of his executors, so that they had a right to refuse to convey even after the incorporation of the institution in a form and manner satisfactory to themselves. This idea of separating these charities for the benefit of whom this general trust was instituted, did not occur to the learned counsel who presented the case of *Prichard* v. *Thompson*, nor to the court which decided that case. There was as broad an antithesis between the two classes of charities named in the will under consideration in that case, as there is between those mentioned in the said thirty-fifth clause (if the Tilden Trust and the other charities there mentioned can possibly be construed as two classes of charities).

In the case cited the devise was upon trust to distribute among such incorporated societies, organized under the laws of the State of New York or the State of Maryland, having authority to receive, etc. It was not dreamed that the provision for the charities in the State of Maryland could be cut off, and the validity of the devise determined, by construing the provision as though it were a trust to distribute among such incorporated societies, organized under the laws of the State of New York, as had authority to receive, etc. And it is plain why no such idea entered into the consideration of the case. The executors, if they had any power of selection at all, had the power to select amongst two classes, namely, societies incorporated under the laws of the State of New York and societies incorporated under the laws of the State of Maryland. They were in form alternative gifts, but they were related to and dependent upon each other, and the will of the testator could not be carried into effect unless the trustees had the power of selection over the whole subject, including both classes. So in the case at bar, by the thirty-fifth paragraph, the devise is to the executors to distribute to the Tilden Trust, or to such charitable, educational and scientific purposes, as in their judgment would render the rest, residue and remainder most widely and substantially beneficial to the interests

of mankind. What Mr. Tilden desired was that the power which he conferred upon his executors should be exercised by them, they having in view the totality of the power given to them, and you can no more separate the Tilden Trust from the other charitable objects mentioned in the last clause than could be separated the New York from the Maryland corporations in the case of *Prichard* v. *Thompson*.

In the cases cited, to sustain the view that the latter portion of this trust might be cut off and the first part remain, there were separate, distinct, independent schemes. In most of them a complete trust had been created during the time limited under our statutes, and after the completion of that trust there had been an attempt to extend the limitation beyond the provisions of the statute, and the courts have held that the first limitation is good and the succeeding one bad. In one case, after having established a valid limitation, two alternative limitations were attempted to be established dependent upon the condition of affairs at the termination of the first estate. One of these alternative limitations was good and the other was bad. They had no connection with each other; they could not exist at the same time. If one took effect the other could not exist, and the court held that if, upon the determination of the first estate, the condition of affairs was such that the valid alternative limitation could take effect, that it might go into operation, notwithstanding the other alternative had been invalid from the moment of its creation. *Schettler* v. *Smith* (41 N. Y., 328) is a case very different from the one at bar.

In the case at bar there was but one general trust, as the testator has plainly declared, and in the execution of that trust the duty has devolved upon his executors of selecting the beneficiary, giving to the Tilden Trust a preference, and that is all. We cannot see how, under the plain rules governing the construction of gifts to charitable uses, such a devise can be upheld. If it is, it must be by reversing the plain principles which seem to have governed devises of this description through all the adjudications, and in violation of what seems to be the plain provisions of the statute. It is undoubtedly a great misfortune that the intention of the testator to found a trust of the character mapped out by his will should be frustrated, and that the city of New York should not receive the

advantages of the munificence by which it was intended that its people should be benefited, but this consideration ought not to cause the court to violate rules and statutes which have been adopted as best subserving the interests of the people, and thus unsettle principles which have obtained through a long course of decisions controlling the rights and interests of property. Many other points have been raised by the counsel for both the appellants and respondents, but it is not thought necessary to consider them in view of what we deem the vital points of the case.

We are, therefore, of the opinion that the judgment appealed from should be reversed, and a new trial ordered, with costs of all parties to be paid out of the fund.

BRADY, J. :

The questions discussed by the presiding justice and Justice DANIELS are not free from difficulty or doubt, but I think, on authority and proper judicial interpretation, the solution of them by the presiding justice is the more acceptable. I concur with him therefore.

DANIELS, J. (dissenting) :

The action has been brought to obtain a construction of the will of Samuel J. Tilden, who died on or about the 4th of August in the year 1886. His will was made on the 23d of April, 1884, and it has been admitted to probate as a will by the surrogate of the county of New York. He was unmarried and left no descendants. At the time of his decease he left a sister, together with nephews and nieces, and other relatives surviving him. For these relatives numerous trusts were directed to be created by the will. They were designated by him as special trusts, and in their extension did not transcend the time in which the statutes of the State have provided that such trusts may legally be continued, and as to those trusts no controversy has arisen in the action, but they have been assumed to be valid and conformable to the laws of the State. After providing the means for the creation and continuance of these trusts the testator gave directions for the disposition of the rest, residue and remainder of his estate, and it is concerning the directions contained in the will for

this purpose that the controversy has chiefly arisen between the parties to the action.

The plaintiff, together with other parties sustaining a similar relation to the testator, have affirmed these directions to be in violation of the law defining the powers of a testator in the disposition of his estate. The directions brought in controversy in this manner are chiefly contained in the thirty-fifth paragraph of the will. By this paragraph the testator requested his executors " to obtain, as speedily as possible, from the legislature an act of incorporation of an institution to be known as the Tilden Trust, with capacity to establish and maintain a free library and reading-room in the city of New York, and to promote such scientific and educational objects as my said executors and trustees may more particularly designate. Such corporation shall have not less than five trustees, with power to fill vacancies in their number; and in case said institution shall be incorporated in a form and manner satisfactory to my said executors and trustees, during the lifetime of the survivor of the two lives in being, upon which the trust of my general estate herein created is limited to wit, the lives of Ruby S. Tilden and Susie Whittlesey, I hereby authorize my said executors and trustees to organize the said corporation, designate the first trustees thereof, and to convey to or to apply to the use of the same the rest, residue and remainder of all my real and personal estate not specifically disposed of by this instrument, or so much thereof as they may deem expedient, but subject, nevertheless, to the special trusts herein directed to be constituted for particular persons, and to the obligations to make and keep good the said special trusts, provided that the said corporation shall be authorized by law to assume such obligation."

" But in case such institution shall not be so incorporated during the lifetime of the survivors of the said Ruby S. Tilden and Susie Whittlesey, or, if for any cause or reason, my said executors and trustees shall deem it inexpedient to convey said rest, residue and remainder, or any part thereof, or to apply the same or any part thereof to the said institution, I authorize my said executors and trustees to apply the rest, residue and remainder of my property, real and personal, after making good the said special trusts herein directed to be constituted, or such portions thereof as they may not deem it expedient to apply to its use, to such charitable,

educational and scientific purposes as, in the judgment of my said executors and trustees, will render the said rest, residue and remainder of my property most widely and substantially beneficial to the interests of mankind."

The testator nominated and appointed John Bigelow, of Highland Falls, Andrew H. Green and George W. Smith, of the city of New York, executors and trustees under his will, and they were charged, by the directions contained in it, with the control and management of his estate for the purpose of carrying his desires into execution. These persons took upon themselves the execution of the trust, and letters testamentary were issued to them, upon proof of the will, by the surrogate of the county of New York.

After receiving letters testamentary upon the estate the executors, for the purpose of creating the Tilden Trust, mentioned in this paragraph of the will, applied to the legislature of the State for a charter creating the corporation which was to be brought into existence under this paragraph. By this act (chap. 85 of 1887) these trustees and their associates were created a body politic and corporate under the name and title of "The Tilden Trust." The three trustees were empowered to select others to act with them so that the number of the trustees should not be less than five.

The act then provided for selecting the successors of these trustees, and continuing the number so designated in office. It was further provided that "the said corporation shall have, in addition to the powers now conferred by law upon all corporations as such, the capacity and power to establish and maintain a free library and reading-room in the city of New York, and for these purposes it shall have power to demand, recover, accept and receive all such money and other property, real or personal as is given to it by virtue of the will of Samuel J. Tilden, or shall be conveyed or transferred to or in any manner bestowed upon it by the aforesaid executors and trustees by virtue of the powers therein conferred upon them; and the said corporation shall have power to hold, manage, improve, dispose of and convey all property at any time received or acquired by it in such manner as may be best calculated to carry out its objects and purposes."

Section 6. The said corporation shall accept and receive all such money or other property as is given to it by the said will of Samuel

J. Tilden, or shall be conveyed or transferred to, or in any manner bestowed upon it as aforesaid by the aforesaid executors and trustees, subject to the terms and conditions expressed in and imposed by the said will of Samuel J. Tilden in respect to the gift or gifts therein and thereby made or provided for, to a corporation to be formed and to be known as the Tilden Trust, and the said corporation shall have power to make and enter into any obligation or obligations to secure due compliance with such terms and conditions.

Section 7. The said corporation shall possess the powers and, except as may be otherwise provided by this act, be subject to the provisions, liabilities, and restrictions contained in the third title of the eighteenth chapter of the first part of the Revised Statutes, but nothing herein contained shall affect the rights of any parties to any action now pending or of any heir-at-law of said Samuel J. Tilden, deceased.

By these provisions the corporation, in this manner created, was empowered to establish and maintain a free library and reading-room in the city of New York and the further authority given to the corporation, was designed to contribute to the advancement of this object, in conformity to the provisions contained in the will. The corporation was vested with the power to accept the property which should be conveyed to it by the trustees under the will, and such other property as it might become entitled to by reason of the lapse of any of the special trusts also contained in the will. This act appears to have been satisfactory to the trustees. It empowered the corporation to accept so much of the rest, residue and remainder of the estate of the testator as should be conveyed and transferred to it by the trustees to maintain this object.

The trustees were authorized to add additional objects to be promoted by the corporation, but they were not directed to add any further object to be subserved by it than that of maintaining a free library and reading-room in the city of New York. Whether this object should be extended by securing an increased capacity for the corporation, was not made mandatory upon the trustees, but was left to be determined by them in the exercise of their discretion. For this purpose the testator empowered them to obtain an act of incorporation which should also permit the promotion of such scientific and educational objects as the executors and

trustees might more particularly designate. This, however, was not mandatory upon them, but it extended no further than to submit the matter to their judgment and determination, and as they did not consider it to be wise so to enlarge the capacity of the corporation, no defect in its creation, or in the powers confided to it, can result from this omission.

The primary object of the testator, if the Tilden Trust should in fact be created, was to provide for and establish and maintain a free library and reading-room in the city of New York. If the trustees and executors acted at all under these provisions of the will, they were bound to act so far as to produce these results. But they were not required otherwise than in their own discretion, to proceed further than this, and the act which was in fact so passed, was ample for obtaining this primary end of the testator, and as long as the fact is that in this form it was satisfactory to the trustees and executors themselves, no fault can be found with it by the plaintiffs or the other parties joining with him in resisting the maintenance of this part of the testator's will.

They were required to obtain this act of incorporation within the lifetime of Ruby S. Tilden and Susie Whittlesey, or of the survivor of them, and that did not transcend the limits which the law permitted to be prescribed for the creation of this corporation. It has, however, been suggested that the time for its organization, and the conveyance of so much of the testator's estate as it might become the recipient of, exceeded, or might exceed, the bounds of the lives of these two persons. But it is quite evident, from the provisions contained in the will, that such a disability was not within the contemplation of the testator. For, by all its provisions, he appears to have been aware of the restraint of the law, by which the title to property has not been permitted to be suspended for a greater period than that of two lives in being at the time when the direction for that object should take effect. For, throughout his will, he has limited all the special trusts created by him in subordination to this restraint of the law. It is evident, therefore, that its provisions were familiar to him as a lawyer, and that they were present in his mind at the time when this will was drawn, and that he did not intend that his executors, as to any portion of the will, should transcend the restraint in this respect

imposed upon his power of disposition by the statutes. He, accordingly, may be held not to have intended the possibility that his executors and trustees should transcend this restraint by their action in creating the Tilden Trust, and endowing it with so much of his estate as they deemed it proper to appropriate to that end. And, in view of these several provisions, the objection which has in this manner been taken may be characterized as being extremely technical and not entitled to the approval of the court, as was said of the same objection presented in *Burrill* v. *Boardman* (43 N. Y., 254.) And it may be further added, in this connection, that the trustees and executors have acted upon this understanding of the directions employed for their government. They have not only, in fact, obtained the act of incorporation which was necessary for this purpose, but they have formally conveyed the rest and residue of the testator's estate to the corporation for the promotion of the objects in this manner mentioned in the will, and sanctioned by the act of the legislature creating the Tilden Trust.

It was not important that the corporation, which might be brought into existence invested with these powers, should exist at the time of the decease of the testator. But it was sufficient, for all the purposes of the law, that it should be created within the lives of these two persons, as that, in fact, was done by the act of the legislature. No infirmity, therefore, arises in the case by reason of the circumstance that this corporation was to be created after the decease of the testator. The same point was elaborately considered and argued in the case just cited, and it was there held that the creation of the corporation by legislative authority within the time during which the absolute ownership of the estate might lawfully be suspended, was sufficient for all the purposes of a devise and bequest to it. This authority, therefore, with the suggestions which have already been made, will dispose of the formal objections that have been presented against the legality of the directions for this purpose contained in the testator's will.

It has, however, been further urged that the testator has exhibited his intention to be to create a technical trust to carry these directions into effect, and it appears that he did believe that might be made effectual by the thirty-ninth paragraph of the will, in which he has in form devised and bequeathed the property in this manner

permitted to be employed, to his executors and trustees, and he has characterized what he proposed in this manner to provide for as the creation of a trust. But such was clearly not its effect, for the statute of this State has permitted express trusts to be created for only four different objects, and they have been explicitly defined by section 55 of article 2, chapter 1 of the Revised Statutes (1 R. S., 728, 729); and the trust in this manner described by the testator is not one of those which this statute has provided might be created.

But a mistake on his part or in this respect, or a designation of what he intended might be done, to be a trust, when it was not a trust in no manner abridged or prejudiced, what he intended might be done in the disposition of his estate. That he fell into an error in making these directions will not defeat the attainment of his object under other provisions of the law. For it has been further provided by section 58 of this part of the Revised Statutes that "where an express trust shall be created for any purpose not enumerated in the preceding sections, no estate shall vest in the trustees, but the trust, if directing or authorizing the performance of any act which may be lawfully performed under a power, shall be valid as a power in trust, subject to the provisions in relation to such powers contained in the third article of this title." This section includes all such directions for the disposition of the estate of a testator, as may not be capable of being maintained as an express trust but are yet sustainable under the provisions of the statute relating to and defining the existence of powers in trust. This is the language of the section, and it has been so clearly expressed as to be free from ambiguity, and not the necessary or proper subject of construction. It has been urged, however, that *Garvey* v. *McDevitt* (72 N. Y., 556) is in conflict with this conclusion. But it clearly is not entitled to that effect. For there it was the sole object of the testator to create one of the trusts mentioned in the section of the statute defining express trusts, and it was held by the court that he had failed to create such a trust, and where this failure had, in this manner, arisen, that the case was not one intended to be provided for by this latter section of the statute. And that is substantially all, so far as it affects this case, that was decided on that occasion. The statute in this respect has, in no manner, been infringed by anything that has taken place either in making or executing the testator's will.

TILDEN v. GREENE.

But, although he has designated what he intended as a trust, which, in a general sense, it is, yet as long as his directions may be construed to create no more than a power in trust, they may be carried into effect, as they have been made, under the authority of this section of the statute.

At the time of the revision of the statutes, which took effect in 1830, very great as well as fundamental changes were made by the revision as that was accepted and adopted by the legislature. The provisions permitting the creation of trusts greatly abridged and restricted them, as they had previously been understood, and trusts were thereby subjected, in many respects, to rigid rules not previously applicable to them. But in reducing and declaring the scope and extent of express trusts, it was not the object of the revisers, or of the legislature afterwards sanctioning their work, to limit the disposition of property to their instrumentality, as they were in this manner defined. But it still remained, in great part, the intention of the law as it was then changed, to permit parties to direct and control the disposition of their estates by means of powers in trust, and for this purpose, as the grantee of the power would not be required to collect the rents or profits of the property, to permit it to descend to the heirs and next of kin, subject only to the subsequent execution of the power. Neither the revisers nor the legislature proposed to restrict the future control which the testator might possess or exercise over his estate in this manner, except that the restraints adopted as the limit of future estates should not be extended by the exercise of the authority to be created. The same rigid rules which have been prescribed for the creation and management of trusts have not been carried into the provisions of the statute so far as powers, or powers in trust, have been provided for and defined. But greater flexibility and freedom have entered into this part of the law, allowing the testator to control the final disposition of his estate, subject to the vesting of the title, in the manner already stated, through the creation and vesting of the authority which the law has in this way liberally permitted.

It is, indeed, true, for the purpose of carrying these provisions of the statute into execution, that a definite person, or class of persons, not too numerous for practical identification and selection, shall be either mentioned or referred to as the person or persons to be benefi-

cially aided in the execution of the power. And this rule was carefully observed in the directions which the testator gave concerning the disposition of this rest and residue of his estate, for there was but one person, and that was this corporation, that might, in the first instance, become entitled to this portion of it, and it was only in case the institution mentioned by him should not be incorporated during the two lives, or the executors and trustees should deem it inexpedient to convey this part of the estate, or any part of it, to the institution, that he then authorized his executors and trustees to apply such rest and residue to such charitable, educational and scientific purposes as in their judgment would render it most widely and substantially beneficial to the interests of mankind. This alternative power of disposition attempted to be created is, under the authorities, undoubtedly void, for the reason of the general and indefinite nature of the directions to be observed in this manner. But, as this was clearly expressed by the testator, it was no more than a distinct and alternative disposition of the property, not to be brought up for any practical object, unless there should be a previous failure in the conveyance under the preceding power of this part of the estate, or the corporation, which it was provided should, in the way that has been done, should not be brought into existence. The conveyance of the estate to the corporation was in no manner made in the slightest degree dependent upon these alternative and final directions, and they could become important only in the event that the trustees and executors should not convey or transfer the property to the corporation, or for a failure to create the corporation itself. And where that may appear to be the case, as it does in this instance, the primary authority which the testator has declared it to be his purpose to effect will not be in any manner rendered invalid by an ulterior, contingent direction of this unlawful character. This subject has frequently been considered by the courts, and the rule has become well settled, that legal directions contained in the testator's will may be observed and carried into effect, notwithstanding there may be present in the instrument others which are in conflict with the law, and cannot be maintained, where the former may be separated from the latter, without in any manner infringing upon the purposes of the testator, as they are embodied in the will.

(*Van Schuyver* v. *Mulford*, 59 N. Y., 426; *Adams* v. *Perry*, 43 id., 488; *Kennedy* v. *Hoy*, 105 id., 134.)

By the operation of the testator's will, which in this manner may be sustained, if the directions contained in it are legal, he has conferred upon the trustees and executors a discretion, by which they were placed at liberty to convey or not to convey, or to apply or not to apply, to the use of the Tilden Trust corporation, the rest, residue and remainder of his real and personal estate, not specifically disposed of, or so much thereof as they might deem expedient for that object. And it is the creation of this discretion that has been the most directly assailed, as not, under the law, being within the competency or power of the testator. And the cases of *Prichard* v. *Thompson* (95 N. Y., 76) and of *Holland* v. *Alcock* (108 id., 312), are prominently relied upon as sustaining this objection. But an examination of the decisions made in these cases do not sustain this position, for they did not, in either instance, fail because of any general directions or discretion proposed to be delegated to the executors for the disposition of the estate itself. But they failed for the reason that the beneficiaries, under the power, were not sufficiently designated or ascertained, to enable the provisions of the will relating to that subject to be carried into execution. No such defect arises in this case, for the beneficiary to whom the residue of the estate, in whole or in part, may be transferred was definitely indicated by the testator in his will, and has, in the manner already stated, been brought into existence by act of the legislature. This case, consequently, is not liable to be affected by anything contained in these decisions. For the court did not condemn the delegation of discretion of this description to the trustees and executors for the bestowment of the property if they should deem it proper to bestow it at all upon the party ascertained and designated by the testator to be in that event its recipient. And that a discretion of this description may be delegated to executors and trustees in the execution of powers in trust was practically held in *Power* v. *Cassidy* (79 N. Y., 602). There the testator gave one-third of the rest of his estate to his executors to be divided among Roman Catholic charities, institutions, schools and churches in such proportions as a majority might decide. And this was held to be a lawful power in trust. That a discretion for the disposition of the estate may lawfully be dele-

gated to others by the testator was, in general terms, also held in the case of *Hartnett* v. *Wandell* (60 N. Y., 346), and so it was in the case of *Taylor* v. *Morris* (1 Comst., 341), where the court held that a discretionary authority for the disposition of property contained in a will might be exercised and carried into effect even by a single surviving executor. And this conformed to no more than the very general legal proposition which has been deemed to be sustained by other decided authorities (2 Perry on Trusts [2d ed.], § 508), and a discretionary power, depending wholly on the volition of the grantee, was assumed by the court to be valid in *Hull* v. *Hull* (24 N. Y., 647); and it is inferentially supported by *Costabadie* v. *Costabadie* (6 Hare, 410, 414); *Davey* v. *Ward* (L. R., 7 Ch. Div., 754); *Proctor* v. *Heyer* (122 Mass., 525); *Richardson* v. *Hall* (124 id. 228, 235); and this is no more than has upon this subject been provided for by the statutes of the State, which have not been so framed as to change this rule.

The provisions authorizing the creation and definition of powers, as they are contained in the Revised Statutes, have been held, so far as they may be applicable, to include the disposition of both real and personal property. (*Hutton* v. *Benkard*, 92 N. Y., 296.) And while by their language they have been made to relate more especially to the definition and regulation of powers concerning the disposition of real estate, they are still to be applied as well to personal estate where that may prove to be practicable. And in this case no obstacle stands in the way preventing that application.

By section 106 of article 3, title 2, chapter 1 of part 3 of the Revised Statutes (1 R. S., 735), it has been provided that a power may be granted "by a devise contained in a last will and testament." And by section 74 (page 732) of the same article a power has been defined to be, "an authority to do some act in relation to lands or the creation of estates therein, which the owner granting or reserving such power might himself lawfully perform." While this section mentions lands as the object to be affected, it is not to be literally construed; for by the preceding section, powers, as they previously existed in law, were abolished, and in the case already mentioned the court of last resort has held that these provisions, though mentioning land alone, are to be applied not only to real, but also to personal property. This definition is exceedingly broad from the language which has

been employed to make it, and it has in the most general way provided for the delegation of the authority to do an act which the owner of the property himself might lawfully perform. And there can be no room for doubt, if the testator had obtained the creation · of this corporation during his lifetime, he might, in the exercise of his discretion, have done precisely what he has declared it to be his intention that his trustees and executors after his decease might do. He has, therefore, attempted to confer upon them no more or greater measure of authority than under this section of the act he was in general terms empowered to bestow.

The statute has further proceeded to define the different classes of powers which may be created, and they have been designated as general, or special and beneficial, or in trust. And that discretionary powers were intended in this manner to be permitted to be created, dependent solely upon the will and disposition of the grantee of the power, is rendered evident by the language of section 96 of the same title. For while that section has provided that imperative powers, actually creating a duty for the grantee, may be compelled to be performed by a court of equity for the benefit of the persons interested, it has also made an exception to this power of compulsion, of powers expressly dependent on the will of the grantee. And if powers could not be legally created, where they should be made expressly to depend on the will of the grantee of the power, there would be no room for making the exception or reservation of them in this manner contained in this section of the statute. By making it, both the revisers and the legislature have demonstrated their intention to be to sanction and permit the creation of powers for the benefit of an ascertained and designated beneficiary, as the power in this case has been created, wholly dependent afterwards for their execution on the will of the grantee, which may or may not, according to his will, be carried into execution. · Their legality has here been assumed and made the subject of implied statutory protection. The language clearly evinces as much as this to have been the design, and it excludes this class of cases, as they necessarily must be, ·from the compulsory interposition and aid of the court, leaving them dependent alone for their execution on the will of the grantee of the power. And having been in this manner reserved, this power has been in

this case, as it well could be, left to depend, for the disposition of the property, wholly upon the voluntary act of the grantees of the power. By no other provision or section of this title has this discretionary class of cases been either excluded or forbidden, nor have they been declared unlawful because they cannot be brought within the controlling jurisdiction of a court either of law or of equity. In other cases authority has been given to the court to act. They include those of powers to be used for the benefit of several different persons, without specifying the share or sum to be allotted to each, and provide for the manner of executing that power. So, it has been further provided, where a trustee of a power, with the right of selection, shall die leaving it unexecuted, that its execution may be decreed in equity for the benefit equally of the persons designated as objects of the trust. And where a power in trust is created by a will and the testator has omitted to designate the person by whom it is to be exercised, there its execution has been devolved upon the Supreme Court. But in no instance has the law in either of these sections, or any other contained in it, abridged the authority of the testator to vest in his executors a discretionary power over his estate, to be expressly dependent upon and exercised according to the will of the grantee for the benefit of a designated person or party. And that such a power may be legally created appears further from sections 77 and 78 of the same title. The first of these two sections sanctions the creation of a general power authorizing an alienation in fee by means of a conveyance, will or charge, of the lands embraced in the power, to any alienee whatever, and the following section has defined a special power to exist where the person, or class of persons, to whom the disposition of the lands under the power is to be made, are designated. And this will is within that designation of authority. For it has authorized the disposition of the testator's property to a designated corporation, which it has been provided should be brought into existence for that end. And this section has, by no form of words or construction which it will support, confined a special power to be one which may be imperative upon the grantee, or which can be enforced by a court of equity. But the person or persons for whose benefit the power may be created are alone required to be designated.

It is then left wholly to the option of the testator what the form of the power may be, and to what extent he may deem it proper to make it dependent upon the discretion or prudence of the grantee for the attainment of the end to be accomplished. By section 95 of the same article this special power is further declared to be in trust " when the disposition which it authorizes is limited to be made to any person or class of persons other than the grantee of such power." And, like the other sections, it is entirely consistent with the existence of uncontrollable discretion vested in the grantee. This will did authorize such a disposition of the residuary estate of the testator, for it empowered the trustees and executors to transfer that part of the estate to the body corporate described and referred to in this manner in the will. It stands in entire harmony with the class of cases mentioned in the next succeeding section in which the execution or non-execution of the power is made expressly to depend on the will of the grantee. Taken together, these sections of the statute supplied ample authority for the creation of this power. It was a power, as this has been mentioned in section 96 of the title, whose " execution or non-execution is made expressly to depend on the will of the grantee." That fully describes it and sanctions what the testator endeavored to accomplish by this delegation of power to his trustees and executors.

Section 102 of the same article has declared that the provisions contained in the preceding article from section 66 to section 71, both inclusive, in relation to express trusts and trustees, shall apply equally to powers in trust and the grantees of such powers. But neither of these sections has taken away the authority, permitted by the provisions concerning powers, to create a discretionary power in trust. If they apply at all to such a trust, they were intended to provide the means for its execution, if the persons to whom the power should be delegated should die without at all entering upon the exercise of the discretion confided to them. And the circumstance that the legislature have applied no more than these provisions of article 2, to the cases of powers, discloses the intention to have been that the other sections of article 2 should in no way apply to the authority to be exercised in cases of this description. For that reason, even if it may be true that a trust could not be maintained or carried into effect by a court without some mandatory

direction including it, it by no means follows that a discretionary power in trust shall be dependent on that authority.

The conclusion is necessarily otherwise. For as long as the statute has, by its language, sanctioned the creation of powers whose execution or non-execution has been expressly made dependent alone on the will of the grantee, they are necessarily legally entitled to be maintained. This principle clearly includes this case and sustains the legality of the power which the testator designed should be vested in his executors and trustees for the disposition of the residue of his estate in favor of the corporation known as the "Tilden Trust." A further objection has been presented to the manner in which the law has provided for the management of this. "Tilden Trust." But that relates only to its government. The objection is more formal than real, and does not interfere with the substantial and beneficial administration of this estate. The object of the testator was to endow this corporation, subject to the approval of his executors and trustees, for the benefit of the masses of the public, and no informal error or irregularity in the mode of its action can be permitted to frustrate that intention or prevent it from being carried into effect.

As the case appears from the will and the other proof which has been produced, the power itself conferring this trust upon the trustees and executors has the sanction of the law, and they have conformed to its requirements, as well as to those of the will, in carrying the power confided to them by the testator into execution.

The judgment should be affirmed.

Judgment reversed and new trial ordered, **with** costs of all the parties to be paid out of the fund.