ISAAC ATWATER *et al. vs.* ANNA S. RUSSELL *et al.*

Argued Jan. 27, 1892. Decided March 11, 1892.

## (Deed Case.)

**Trusts—Certainty in the Declaration of.**—The declaration of a trust or a power in trust must be reasonably certain in its material terms, and this requisite of certainty includes the subject-matter or property embraced within the trust, the beneficiaries or persons in whose behalf it is created, the nature and quantity of the estate which they are to have, and the manner in which the trust or trust power is to be executed.

**Deed of Lands in Trust Construed.**—A certain deed examined and construed. *Held*, that the power of alienation of the real property therein described was not suspended by the terms of the instrument, nor was there effected a suspension of the ownership of the proceeds of a sale obnoxious to the rule of the common law in force in this state, against perpetuities. *Held, further*, that in respect to the several matters in which reasonable certainty is required, as above stated, the said instrument was sufficiently definite and certain.

### PRACTICE—COSTS.

Decided April 14, 1892.

**When One Defendant may Appeal against a Codefendant.**—Where the rights of several parties defendant, as related to the subject of the action, are conflicting, and the judgment is in favor of some and against others, a defeated party may serve his notice of appeal upon his codefendants as well as upon the plaintiff, and have the rights of the defendants, as between themselves, finally adjudicated in this court.

**Same — Who Entitled to Costs.** — And, if the judgment is affirmed, the respondents, whether plaintiffs or defendants, will be deemed prevailing parties for the purposes of the adjustment of costs, under 1878 G. S. ch. 67, §§ 16, 17.

**Costs Here, in Action to Construe Will.**—The statute, in respect to costs in this court, is applicable to actions for the construction of wills.

**Statutory Costs Only are Given in This Court.**—The authority of this court to award costs is regulated and limited by the statute, and it has no equitable or discretionary power over the subject, other than the statute confers.

Appeal by defendants Anna S. Russell, Walter S. Martin, Margaret G. Brown, and St. Luke's Hospital from orders of the District Court of Hennepin County, *Hicks*, J., made September 29, 1891, refusing to each a new trial of the action.

Many of the matters recited in the statement of facts in the preceding will case, *ante*, p. 22, are pertinent in this, and reference is here made to that statement. At the time of executing the codicil to the will set out in that case Richard Martin, deceased, executed and delivered to Edward Martin, Isaac Atwater, and William W. Folwell a deed of the Keegan farm, near Highland Lake, in Minneapolis, Minn., in trust as recited therein, and they at the same time executed and delivered their acceptance of the trust, and agreed to discharge the same to the best of their ability. They brought this action in the District Court of Hennepin County, Minn., against Anna S. Russell, Walter S. Martin, Margaret G. Brown, St. Barnabas' Hospital, The Sheltering Arms, and St. Luke's Hospital, a corporation of New York City, defendants, to obtain a construction of this deed, and have the court adjudge whether it creates a trust or a power in trust for the benefit of the beneficiaries therein named as against the heirs at law of Richard Martin, and the residuary legatees in his will.

Richard Martin's original scheme was to give The Sheltering Arms the Keegan farm, and to give St. Barnabas' Hospital the River farm, and this was the arrangement by his will made September 24, 1883. But within the following five years the market value of the Keegan farm advanced to twice its former value, while the value of the River farm remained stationary. In view of these facts Mr. Martin deeded the Keegan farm to these plaintiffs in trust for the Hospital, and by a codicil to his will gave the River farm to the executors of his will in trust, for the Orphanage. The complaint set out the deed and the will *in hæc verba*. A copy of the will and codicil is contained in the statement of facts in the previous case, *ante*, p. 25. A copy of the deed is appended to this statement.

Answers were filed, by which the heirs at law prayed judgment that the deed of trust is invalid and void, and that they are the owners of the land. St. Luke's Hospital prayed judgment sustaining

and construing the deed, and awarding the land to it, instead of to St. Barnabas', for the uses and upon the trusts stated in the deed. This action was tried April 30, 1891. The District Court filed its findings of fact and conclusions of law September 15, 1891, holding that the trust created by the deed was not an express trust authorized by 1878 G. S. ch. 43, § 11, and was invalid as a trust, but that Mr. Martin by the deed gave the grantees a valid power in trust in favor of either St. Barnabas' or St. Luke's, as the grantees might determine; that the power of sale was imperative, and effected an equitable conversion of the land into money as of the date of the execution and delivery of the deed, and that there was no suspension of the power of alienation of the land; that the Hospital was the *cestuy que trust*, and not the charity patients treated therein. That court further held that the legal title to the farm was by and under the residuary clause in the will devised to the executors upon trust for St. Barnabas' Hospital and The Sheltering Arms as residuary legatees, but subject to the execution of the power in trust created by the deed.

The heirs and St. Luke's were alike dissatisfied with the decision, and they and it both moved for a new trial, and being denied, they separately appealed to this court. After the decisions here affirming those of the lower court in this and the preceding will case, applications were made here for allowances out of the fund for counsel fees, and taxable costs in this court. On April 14, 1892, this court filed its decision in these applications.

The deed of trust and acceptance were as follows, viz.:

### DEED.

THIS INDENTURE, made and entered into by and between Richard Martin, of Dutchess County, State of New York, party of the first part, and Edward Martin, of Dutchess County, State of New York, Isaac Atwater and William W. Folwell, of Hennepin County, State of Minnesota, parties of the second part,

WITNESSETH, That the said party of the first part, for and in consideration of the sum of one dollar to him in hand paid, the receipt whereof is hereby acknowledged, and of the trust and confidence I

repose in the parties of the second part, do hereby grant, bargain, sell and convey unto the said parties of the second part, and their successors in this trust, the following mentioned and described property and real estate lying and being in Hennepin County, State of Minnesota, to wit:

The South East quarter of the North East quarter, and the North East quarter of the South East quarter of Section number nineteen (19), in Township number twenty-nine (29), of Range number twenty-four (24), and also the South half of the North West quarter, and the North half of the North West quarter, of South West quarter of Section number twenty in same Township and Range, in trust, nevertheless for the following uses and purposes, and for none other, namely:

1. To enter into and take possession thereof and of all and singular the said real estate above described, and to collect the rents and profits thereof until the sale of the same, and to apply the same to pay the taxes on said land, and the expenses of carrying out this trust, and if any deficiency there be, to charge the same to the lands above described.

2. As soon as in the judgment of my said trustees the said lands can be sold for a reasonable price compared with other lands in the vicinity, to sell said lands and convey the same in fee-simple to the purchaser for such amount of cash down as they may deem expedient, and to secure the balance by mortgage on said land.

3. The said trustees shall sell said lands within the next ten years. The proceeds of the same shall be appropriated as follows, viz.: If the Protestant Episcopal churches in the City of Minneapolis shall prove to the satisfaction of my said trustees that they will permanently sustain St. Barnabas' Hospital as a church hospital, I direct my trustees to pay over the moneys received from the sale of said lands for the endowment of said Hospital. And by the endowment of said Hospital I mean that said amount is not to be spent on buildings for the same, but for the support of charity patients in the same.

4. In case the Protestant Episcopal churches existing now or

hereafter in the City of Minneapolis, before this trust is fully exe-
cuted, do not fully satisfy my aforesaid trustees, or their succes-
sors, that they will efficiently support and sustain said St. Barn-
abas' Hospital as a church hospital, then my trustees are directed
to pay over the proceeds of said lands to St. Luke's Hospital of
the Episcopal Church in the City of New York; or any portion of
such proceeds as may remain in their hands, whenever they shall
be satisfied that said churches are not disposed to carry out the
true intent and meaning of this trust.

In the witness whereof I have hereunto set my hand and seal,
September 29th, 1888.               RICHARD MARTIN. [L. S.]

   In presence of
      JOHN B. ATWATER,
      SAMUEL HILL.

STATE OF MINNESOTA, }
               } ss.
COUNTY of HENNEPIN, }

Personally appeared before me this first day of October, 1888,
Richard Martin, unmarried, to me personally known to be the
same person described in and who executed the foregoing deed, and
he acknowledged that he executed the same freely and voluntarily
as his free act and deed.               SAMUEL HILL,
   [NOTARIAL SEAL]                         Notary Public,
                            Hennepin County, Minn.

ACCEPTANCE.

We hereby accept the trust expressed in the within deed
and agree to discharge the same to the best of our ability.
   October 1, 1888.               I. ATWATER,
                         WILLIAM W. FOLWELL.
                         EDW. MARTIN.

*Koon, Whelan & Bennett* and *James W. Lawrence,* for appellants
the heirs at law.

The beneficiary under the deed,—the object of the gift or convey-
ance,—is indefinite, uncertain, and cannot be ascertained. The

beneficiary of the trust attempted to be created in favor of St. Barnabas' Hospital is not a person, or corporation, but an indefinite, fluctuating class of persons described as "charity patients in" St. Barnabas' Hospital. They, considered either as individuals or as a class, are undefined and uncertain, and have no legal capacity to take directly the legal title, or that being lodged in trustees or others, to take the equitable title to the bequest; it not being possible to invoke, in this state, the law of favored testaments or grants containing gifts to charity. *Levy* v. *Levy*, 33 N. Y. 97; *Downing* v. *Marshall*, 23 N. Y. 366, 382; *Little* v. *Willford*, 31 Minn. 173; *German Land Ass'n* v. *Scholler*, 10 Minn. 331, (Gil. 260.)

Assuming that the beneficiary is a corporation, a person otherwise capable of taking, it must be a person that can bring itself within the terms of the bequest so as to say that the bequest was made in its favor. The law requires it to be a person that can say that it has a right or interest in the subject of the bequest; a person that can come forward as a party in a court of justice and claim the benefit bestowed. 2 Pom. Eq. Jur. §§ 1009, 1025, and note; 2 Story, Eq. Jur. §§ 964, 979, *et seq.; Power* v. *Cassidy*, 79 N. Y. 602; *Levy* v. *Levy*, 33 N. Y. 97.

No trust can be created or sustained that depends for its execution, for its validity or invalidity, upon the mere exercise of the will of the trustee. No trust can be created or sustained which depends upon the exercise by the trustee of an election whether he will or will not execute the alleged trust. Discretionary power in the trustee to give or withhold is incompatible with the exercise of a valid trust. Where discretion is given by the grantor to a trustee to give or withhold from a designated object, it is a mere naked authority, from which no trust can be implied, and this discretion cannot be exercised or controlled by the court. In all cases the directions must be imperative on the trustee, and if they confer a mere power or authority, and leave it entirely at his discretion to apply or not to apply the gift to the designated purpose, no trust will be created, but the trustee will hold the interest as trustee by resulting trust, for the heir or next of kin of the donor, or grantor. It is absolutely essential to the validity of a trust, that the power conferred upon

the trustees be so defined and limited by the grantor that the courts can either compel its exercise, or in default of its exercise by the trustees, execute the power by an ordinary decree in equity. *Holland* v. *Alcock*, 108 N. Y. 312; *Tilden* v. *Green*, 130 N. Y. 29; *Read* v. *Williams*, 125 N. Y. 560; *Maddison* v. *Andrew*, 1 Ves. Sr. 60; *Alexander* v. *Alexander*, 2 Ves. Sr. 640; *Kemp* v. *Kemp*, 5 Ves. Jr. 849; *Keates* v. *Burton*, 14 Ves. Jr. 434; 2 Sugd. Powers, p. *174; 2 Perry, Trusts, § 510; *Caplin's Will*, 11 Jur. (N. S.) 383; *Prendergast* v. *Prendergast*, 3 H. L. Cas. 195; *Coe's Trust*, 4 Kay & J. 199; *Dillaye* v. *Greenough*, 45 N. Y. 438, 445; *Prichard* v. *Thompson*, 95 N. Y. 76; *O'Hara's Will*, Id. 403.

The grantor has invested his trustees with a mere discretionary power. They may, or may not, exercise or execute this power, at their sole will and pleasure. In them is lodged a discretionary power to give or withhold as to either of said hospitals. Indeed it is a worse than discretionary power, it is a power of discretion hinged upon contingencies and conditions which not only may never happen, but which in the nature of things, are impossible of fulfillment, even if the language of the conditions was sufficiently definite to be comprehensible. No court can compel or control such power of discretion lodged in these trustees, or exercise it in their place or stead, for no court can by its mandate, reach the judgment of these trustees, or control or regulate their discretion by judicial decree. The result will be the same if these apparent trustees are clothed only with a power in trust. 1878 G. S. ch. 44, §§ 24, 25; *Read* v. *Williams*, 125 N. Y. 561; *Tilden* v. *Green*, 130 N. Y. 29.

The subject of the pretended gift of conveyance under said deed of trust, is indefinite, uncertain, and cannot be ascertained. And the nature and quantity of the interest which the beneficiary or beneficiaries under said deed is or are to have in the gift or conveyance therein, are alike indefinite and uncertain. The declaration of trust, whether written or oral, must be reasonably certain in its material terms; and this requisite of certainty includes the subject-matter or property embraced within the trust, the beneficiaries or persons in whose behalf it is created, the nature and quantity of interests which they are to have, and the manner in which the trust is to be per-

formed.    2 Pom. Eq. Jur. § 1009; 1 Jarm. Wills, (5th Amer. Ed.)
357.

Any words by which it is expressed or from which it may be im-
plied, that the trustee has the discretionary power of withdrawing
the whole or any part of the subject from the object of the testator,
or grantor's wish or request, will prevent the subject of the gift from
being certain.    *Knight* v. *Knight*, 3 Beav. 148, 174; *Lechmere* v.
*Lavie*, 2 Mylne & K. 197; *Meredith* v. *Heneage*, 1 Sim. 543; *Sale* v.
*Moore*, Id. 534; *Eade* v. *Eade*, 5 Madd. 118; *Pierson* v. *Garnet*, 2
Eden, Brown Ch. 45, 230; *Sprange* v. *Barnard*, Id. 585; *Russell* v.
*Jackson*, 10 Hare, 208.

The conditions upon which, and the manner in which, the pre-
tended trust contained in said deed of trust is to be executed are
indefinite and uncertain, and said trust is undefined.

The deed directs the trustees to pay over the money received from
the sale of said land for the endowment of St. Barnabas' Hospital,
"If the Protestant Episcopal churches in the City of Minneapolis
shall prove to the satisfaction of my said trustees that they will per-
manently sustain St. Barnabas' Hospital as a church hospital."
The particular churches that are thus to act, are undefined.    If all
said churches in said city, then all at what time, is undefined.
Whether said churches in their corporate capacity, or the individual
members thereof are intended, is undefined.    If the churches in
their corporate capacity are meant, then the requirement to use their
funds in support of said hospital is beyond their corporate powers.
1878 G. S. ch. 34, tit. 4, § 235.    If the individual members of said
churches are meant, then the requirement is to be performed by an
undefined, fluctuating class of persons.

What the churches must do, how they are to act, the proper
method of their procedure, the kind of evidence they must adduce,
and how and where adduce it, in order to make the required proof,
is uncertain.    Whether proof to the satisfaction of the trustees is
proof absolute and beyond doubt or reasonable proof only, is uncer-
tain.    Apparently proof beyond doubt is required, for clause four of
the deed makes the condition of gift to St. Barnabas' Hospital, that
said churches do fully satisfy the trustees.    When the trustees are

or ought to be fully satisfied by the proof, is uncertain and cannot be made certain to any court. Whether the condition would be fulfilled if some, but not all the trustees were satisfied is uncertain. How the churches are to prove that they will permanently sustain, *i. e.* forever sustain the hospital is uncertain. That they cannot prove this, is certain; and if the grantor did not intend they should, then the period of their sustaining the hospital which is to be proved by them, is uncertain. This condition on which St. Luke's is to have the property is in all its parts, as indefinite and uncertain as the condition upon which the gift to St. Barnabas' Hospital depends, and as incapable of fulfillment.

If the provisions of the deed shall be held to create a trust or a power in trust, its provisions are so vague, indefinite and uncertain that they are incapable of enforcement by judicial decree and are invalid. It was not the intention of the grantor to give to the trustees a power in trust under the statutes. The words of the grantor plainly indicate that he intended to create a trust *Chamberlain* v. *Taylor*, 105 N. Y. 185; *Cooke* v. *Platt*, 98 N. Y. 35; *Tilden* v. *Greene*, 54 Hun, 231, and 130 N. Y. 29.

All powers are by the statute divided into beneficial powers, and powers in trust. Beneficial powers have for their sole object the grantee of the power, and are to be executed solely for his benefit. Powers in trust have for their object designated persons other than the grantee of the power, and must be executed solely for the benefit of such other persons. This power is plainly a power in trust, and is manifestly a special power in trust. 1878 G. S. ch. 44, § 23; *Tilden* v. *Greene*, 54 Hun, 231; *Smith* v. *Bowen*, 35 N. Y. 83.

By the provisions of this deed the execution or nonexecution of the power is not made expressly to depend upon the will of the grantees. On the contrary the purposes of the deed require its execution and therefore the power is imperative. *Tilden* v. *Greene*, 54 Hun, 231; *Dana* v. *Murray*, 122 N. Y. 604; *Downing* v. *Marshall*, 23 N. Y. 366.

Measured by the only rule by which the validity or invalidity of a power in trust can be determined, viz. the ability of a court of equity

to execute the power by an ordinary decree, the attempted grant is invalid as a power in trust for the very same reasons which render it invalid as a trust; to-wit, the want of a designated beneficiary entitled to compel the exercise of the power for his benefit, the want of a distinct fund, and the want of certainty as to the manner in which the trust is to be performed. *Tilden* v. *Greene*, 54 Hun, 231, and 130 N. Y. 29; *Power* v. *Cassidy*, 79 N. Y. 602; *Prichard* v. *Thompson*, 95 N. Y. 76; *Holland* v. *Alcock*, 108 N. Y. 312.

This deed together with the grant of the land therein described is void, because it attempts to create a trust which is invalid by our statutes regulating uses and trusts.

If to the land described in said deed the doctrine of equitable conversion be held to apply, so that the land becomes personal property, then the conveyance attempts to create a trust which is invalid by the statute. 1878 G. S. ch. 43, §§ 1, 11, 14.

Why the legislature passed Laws 1875, ch. 53, it may not be profitable to consider at any great length. A purpose may have influenced it to attempt to restrict trusts in personal property within narrower limits than those of the common law, and to harmonize their administration with that of trusts relating to real estate, by incorporating with the original statute of uses and trusts this amendment limiting the objects for which trusts in personal property might be created, and at the same time providing a mode for their administration. Whatever the purpose may have been, we gather from the language of the chapter as amended that it was the intent of the legislature in passing the amendment of 1875 to abolish all trusts of personal property except those specially enumerated in the act.

The deed is void because it contravenes the statutes of Minnesota limiting the period of suspension of alienation of estates in land.

The deed is void because it contravenes the rule against perpetuities at common law. If to the land described in the deed the doctrine of equitable conversion be held to apply, so that to all intents and purposes the land became personal property, then the grant is in contravention of the common-law rule against perpetuities. This rule prohibits the suspension of the ownership of personal property

for any period longer than a life or lives in being at the testator's death, and the term of twenty-one years more. 1 Schouler, Pers. Prop. § 146; Gray, Perp. § 201 *et seq.;* 1 Jarm. Wills, (5th Amer. Ed.) p. *252.

The limitation upon ownership must be upon life, and must terminate within the period provided by the rule. It is not enough that it may terminate. 2 Washb. Real Prop. (4th Ed.) p. 703; 4 Kent, Comm. (13th Ed.) p. *283; *Hawley* v. *James,* 16 Wend. 62, 120; *Schettler* v. *Smith,* 41 N. Y. 328; *Phelps' Ex'r* v. *Pond,* 23 N. Y. 69; *Holland* v. *Alcock,* 108 N. Y. 312; *Maddison* v. *Andrew,* 1 Ves. Sr. 57.

The deed cannot upon the doctrine of charitable uses at common law be sustained. *Holland* v. *Alcock,* 108 N. Y. 312; *Adams* v. *Perry,* 43 N. Y. 487; *Bascom* v. *Albertson,* 34 N. Y. 584; *Levy* v. *Levy,* 33 N. Y. 97; *Ayres* v. *Trustees of M. E. Church,* 3 Sandf. 351; *Holmes* v. *Mead,* 52 N. Y. 332; *Owens* v. *Missionary Soc. of M. E. Church,* 14 N. Y. 380.

It results as follows: That said Richard Martin the grantor in the deed died intestate as to the land described therein; and that said land does not become a part of his residuary estate under his will to be disposed of under the residuary clause therein, but it goes directly to his heirs at law. Schouler, Wills, § 545 *et seq.; Kip* v. *Van Cortland,* 7 Hill, 346; 4 Kent, Comm. (13th Ed.) p. *541, (624;) 1 Jarm. Wills, (5th Amer. Ed.) p. *645 *et seq.; Hawley* v. *James,* 5 Paige, 318; *Bogert* v. *Hertell,* 4 Hill, 492; *McCarty* v. *Terry,* 7 Lans. 236; *Smith* v. *Claxton,* 4 Madd. 484; *Betts* v. *Betts,* 4 Abb. N. C. 317.

*H. V. Rutherford,* for appellant St. Luke's Hospital.

Whether the deed creates a trust, or a trust power, is a matter not affecting the rights of St. Luke's. If a valid trust is not created, a valid trust power, so far as concerns St. Luke's, is. Whether the deed creates a trust, or trust powers, it is void as to St. Barnabas' for uncertainty as to the time when it is to become operative, *i. e.* when the churches are to prove that they will sustain the hospital.

The deed is void as to St. Barnabas' for uncertainty as to the manner in which, and the extent to which, the churches are to prove that they will support the hospital; and because proof by the churches

that they will permanently, *i. e.* forever, support the hospital, is a legal and physical impossibility.

The deed is void, as to St. Barnabas', for uncertainty as to the extent to which the churches are to support the hospital, and because the Protestant Episcopal churches, under the law creating them, have no right or power to support the hospital.

The deed is void as to St. Barnabas' for uncertainty as to the character of the hospital to be supported by the churches; the designation, a church hospital, having no fixed meaning which the court can recognize; and for uncertainty as to the persons intended to be benefited by it, and the uses to which the fund is to be devoted.

The objections to the deed on account of its uncertainties cannot be remedied by any claim of a discretionary power in the trustees, and such a discretionary power would be fatal to the deed, so far as concerns St. Barnabas'.

The doctrine of equitable conversion, being applicable to the subject-matter of the deed, the land must be treated as personal property. And the gift to St. Barnabas' is void, because it violates the common-law rule against perpetuities, in that it suspends the time when the gift shall vest in that institution for an indefinite period not measured by a life or lives in being and twenty-one years. That while the deed must be held void as to St. Barnabas', it is good in favor of St. Luke's for whatever reason the prior gift may fail. The manifest intention of the grantor was that there should be some kind of co-operation between himself and the churches in support of this hospital. His part in the matter was to be his gift of the proceeds of the land. So far as the amount of his contribution is concerned, it is fixed and certain. But, before it should go to the hospital he desired that the churches should contribute their share. And before the gift can be construed as valid, it must be ascertained what it is that the churches are to do. But can this be ascertained? So far as the deed speaks they are to support it. But to what extent? Are they to defray all the expenses incurred by it in the care and relief of the sick, wounded, and needy? Probably not, for the donor's own contribution is intended to do part of this. If then they are not to support it in this sense, to what ex-

tent must they do so? Is it to be kept up on a grand scale or a meager one? If it should be kept barely above bankruptcy and decay, it might be said to be supported. And yet the donor must have had in his mind some standard to be maintained before his generous gift should take effect. *McKeon* v. *Kearney*, 57 How. Pr. 349.

The Protestant Episcopal churches, under the law creating them, have no right to support the hospital. Of course, if the operation of a power is made to depend upon an individual or a corporation committing a breach of the law, a court of equity will not uphold it. And the power here is made to depend upon such a condition. Before it can take effect the churches are to prove that they will support St. Barnabas' Hospital. Of course the churches in their corporate capacity are here referred to. The law knows them in no other sense. But these corporations have no power, under the law, to do what they are to prove that they will do. Their powers are distinctly limited by the law incorporating them. They are empowered to use their funds only for the use and benefit of their respective parishes. 1878 G. S. ch. 34, § 235.

If the deed is to be construed as it reads, it follows that the gift to St. Barnabas' Hospital can vest only upon the churches committing an unlawful act. What Mr. Martin meant counsel will claim was, that the churches should manifest an active interest in the welfare of the hospital and in some manner convince the trustees that they would consider themselves bound to give it their moral support; because of the well-known fact that churches are practically charitable, as well as religious, bodies and because the maintenance of asylums and hospitals is a part of the parochial work of all churches. Such an assumption is a dangerous departure from the rules of construction. When words have a known legal meaning, it is a novel theory to assume that they were not intended to be used in that sense, and to endeavor to find some other meaning, even though it be to enable a deed to stand rather than to fall. There is no doubt of the legal meaning of the words used by Mr. Martin here.

If the churches had entered into a contract with Mr. Martin in his lifetime, whereby they had agreed to support St. Barnabas' Hospital,

could it have been maintained that a manifestation of an interest in that institution, was all that was called for by the agreement? Such an agreement would necessarily be construed as an obligation to contribute some financial corporate support, and as an obligation beyond the corporate power of the churches to perform. It would also be held bad for indefiniteness as to the extent of the support called for. And the same rule must be applied here.

The deed is void as to St. Barnabas' Hospital for uncertainty as to the character of the hospital to be supported by the churches, the designation a "church hospital" having no fixed meaning which the court can recognize. The difficulty here is, that there is no such thing known to the courts or to men as a church hospital. The name may be, and is in common speech applied to different kinds of hospitals, but it carries in itself no particular and fixed meaning to enable one to decipher the grantor's intent in using it. The case is exactly as if the gift had been made directly to trustees to found and support a church hospital, without further directions as to the details of the scheme. It is just as essential that the scheme that was in the grantor's mind should be clearly defined, as it would be if the gift had been in terms to found and support a hospital. Taking this view of the language used by him, the difficulty in the way of sustaining the deed becomes clear. *Bascom* v. *Albertson*, 34 N. Y. 584; *Grimes' Ex'rs* v. *Harmon*, 35 Ind. 198; *Owens* v. *Missionary Soc. of M. E. Church*, 14 N. Y. 380; *Levy* v. *Levy*, 33 N. Y. 97; *Beekman* v. *Bonsor*, 23 N. Y. 298.

While the deed must be held void as to St. Barnabas' Hospital, it .is good in favor of St. Luke's Hospital for whatever reason the prior gift may fail. The meaning and intent of the grantor is manifest that either St. Barnabas' Hospital or St. Luke's Hospital shall take. Provision is first made for St. Barnabas' Hospital. The alternative gift is to St. Luke's Hospital. St. Luke's is to take in the contingency that St. Barnabas' Hospital does not take. If the contingency upon which St. Luke's Hospital is to take, happens for a reason not contemplated by the grantor at the time, that will not.prevent the court giving effect to his manifest intention. In other words, the failure of the St. Barnabas' gift for any reason, is the contingency

upon which St. Luke's is to take. *Dodge* v. *Williams,* 46 Wis. 70, 103; *Hall* v. *Warren,* 9 H. L. Cas. 419; *Cruikshank* v. *Home for the Friendless,* 113 N. Y. 337.

The costs and disbursements of the two beneficiaries in the deed, with a reasonable attorney fee to each, should be ordered to be paid out of the fund in dispute. Whatever service they have been able to render in aid of a construction of the deed must be considered as rendered in aid of a proper administration of the trust. And the expenses of administering the trust is one of the express purposes for which the deed was given. It is therefore contended that this court may, for this reason, and by virtue of its chancery powers, order the costs and counsel fees of the parties to be charged up against the subject-matter of the deed. *Seebrock* v. *Fedawa,* 33 Neb. 413; *Webster* v. *Morris,* 66 Wis. 366; *Ford* v. *Ford,* 70 Wis. 19.

*Jackson & Atwater,* for respondents.

So far as concerns the questions at issue between the parties, it is probably immaterial whether the instrument be construed as creating a valid trust, or valid powers in trust. In either case the heirs or residuary legatees are ultimately deprived of the property; in either case the construction as to the validity of the provisions and as to the proper beneficiary is the same. In the one case the legal fee would vest directly in the trustees, while in the other, it would be in the heirs or legatees, but subject to being divested by the subsequent execution of the trust powers. The decisions from New York upon statutes identical with our own sustain the validity of powers similar to those in this deed. *Cooke* v. *Platt,* 98 N. Y. 35; *Konvalinka* v. *Schlegel,* 104 N. Y. 125; *Henderson* v. *Henderson,* 113 N. Y. 1; *Townshend* v. *Frommer,* 125 N. Y. 446; *Heermans* v. *Robertson,* 64 N. Y. 332; *Heermans* v. *Burt,* 78 N. Y. 259; *Morse* v. *Morse,* 85 N. Y. 53.

There was no suspension of the power of alienation. The instrument in question contained a mandatory power of sale with a disposition of the proceeds as money to one of two designated beneficiaries. This clearly effectuates an equitable conversion of the land into money, unless there was an illegal suspension of the power

of alienation. *Cooke* v. *Platt,* 98 N. Y. 35; *Morse* v. *Morse,* 85 N. Y. 53; *Ford* v. *Ford,* 70 Wis. 19; *Id.,* 72 Wis. 621; *Id.,* 80 Mich. 42; *Craig* v. *Leslie,* 3 Wheat. 563; 1 Pom. Eq. Jur. § 371; 1 Jarm. Wills, ch. 19; 6 Amer. & Eng. Enc. Law, 664.

Mr. Martin commands his trustees to sell the land as soon as in their judgment a reasonable price can be obtained. It seems too clear for argument that this injunction changes not one iota the duty of the trustees, places not an additional restriction upon the power of sale, delays not one day the execution of the trust. And in forming their judgment as to whether any particular price were reasonable, the trustees would necessarily compare it with the prices of land in the vicinity. This provision in regard to the time when the lands are to be sold is nothing more than an express statement of the necessary implication of law. It imposes no duty upon the trustees which would not have been imposed upon them had it been omitted. It places no restrictions upon the sale of the lands which the law would not have placed in its absence. It is in fact mere tautology, and the instrument had exactly the same legal effect as if these words were stricken out. Consequently it can in no event be construed as constituting any suspension of the power of alienation. *Robert* v. *Corning,* 89 N. Y. 225; *Henderson* v. *Henderson,* 113 N. Y. 1; *Ford* v. *Ford,* 70 Wis. 19.

The New York courts, in the course of their flounderings in the law of trusts, decided that a bequest to an institution to be incorporated in the future by special law, not limited on two lives in being, offended against this law under discussion. But in a recent case they have made the very sensible suggestion that this ruling might not apply, if the institution were to be incorporated under a general law. *People* v. *Simonson,* 126 N. Y. 299.

There is no suspension of the absolute ownership of the personal property. There being no suspension of the power of alienation of the lands, and the mandatory power of sale effectuating a conversion of the land into personal property, there is under the terms of the instrument no suspension of the ownership of the proceeds of the lands, and no suspension for a period not authorized by law.

The time when the trustees are to exercise their power of selec-

tion between the two beneficiaries is fixed at the time when the lands are sold and the proceeds are in their hands. When the trust has been so far executed, the two beneficiaries can bring a bill against the trustees to compel them to exercise their judgment upon the facts specified in the instrument, and to pay over the net proceeds to one or the other hospital, according to such determination. In such case the courts would not listen an instant to a claim of the trustees to keep these proceeds in their hands for an indefinite time before making this determination.

There is no uncertainty as to the beneficiaries or the subject-matter of the trust. Counsel for the heirs at law claim that the provision for St. Barnabas' Hospital is invalid because the instrument provides that the proceeds from the sale of the land are to be used for the support of charity patients. The basis of this contention is that by this statement the charity patients become the beneficiaries of the trust and not the hospital, and that these beneficiaries are so uncertain and indefinite as to render the trust invalid. This position is manifestly untenable. The property goes directly to the corporation. Its control over the *corpus* of that property is absolute, and the expressions of the donor's intention that the corporation shall use the gift for some one of the purposes for which it was created, impresses no new trust on the property itself. The hospital remains the legal beneficiary of the trust and the statement of the donor's wishes amounts to nothing more than a determination of the direction in which the gift shall be used. This subject has been so much discussed in New York and Wisconsin, and the decisions are so unanimous against appellants' contention, that it is not necessary to add more upon the point, beyond a reference to the authorities. *Fosdick* v. *Town of Hempstead*, 125 N. Y. 581; *Williams* v. *Williams*, 8 N. Y. 525; *Adams* v. *Perry*, 43 N. Y. 487; *Wetmore* v. *Parker*, 52 N. Y. 450; *Dodge* v. *Williams*, 46 Wis. 70.

The discretionary power of selection by the trustees between the two hospitals is valid. *Power* v. *Cassidy*, 79 N. Y. 602.

In considering this provision, we are always to keep in mind that the payment to St. Barnabas' Hospital is made to depend upon the mental action of the trustees with regard to certain facts, and

not upon the objective existence of those facts themselves. It is clearly apparent from all parts of the deed that the case is one of a discretionary power of selection in the trustees between two beneficiaries, and not the case of a legal condition precedent; that is to say, the vesting of the gift in St. Barnabas' Hospital is not to be determined by the circumstance that the churches, as a matter of fact, have provided for the permanent support of the hospital, but by the circumstance that the trustees are satisfied that the churches will furnish such support. *Ould* v. *Washington Hospital for Foundlings*, 95 U. S. 303; *Dodge* v. *Williams*, 46 Wis. 70; *Delany* v. *Delany*, 15 C. D. 55; *Webster* v. *Morris*, 66 Wis. 366; *Loring* v. *Blake*, 98 Mass. 253; *Lorings* v. *Marsh*, 6 Wall. 337; *Lyman* v. *Parsons*, 26 Conn. 493; *Leavitt* v. *Beirne*, 21 Conn. 1.

Appellants the heirs at law contend that all trusts in personal property except that specified in 1878 G. S. ch. 43, § 11, subd. 5, are abolished in this state, and that the doctrine of charitable uses does not prevail here as to personal property. We claim that these objections are both irrelevant and unfounded. The first objection is irrelevant because the instrument we are discussing contains, properly speaking, no trust prohibited by the section of our statute above quoted, even were the same to be construed as desired by appellants. The only thing provided to be done with the proceeds of the lands is to pay them over to the designated beneficiaries. They are not to be invested, handled, or managed by trustees. No period of time is interposed between their realization and the ownership and enjoyment of them by one of the two hospitals.

Chapter forty-three (43) of our General Statutes is a direct legacy from New York, which we share in common with Michigan and Wisconsin. All these states have held without exception that this chapter, as it stood prior to the amendment of 1875, had no application to personal property. *Baker* v. *Terrell*, 8 Minn. 195, (Gil. 165;) *Toms* v. *Williams*, 41 Mich. 552; *Dodge* v. *Williams*, 46 Wis. 70; *Penny* v. *Croul*, 76 Mich. 471.

The abolition of all trusts in personal property except the one specified in Laws 1875, ch. 53, would have been so fundamental and important a reversal of all former policies in legislation, that it is im-

possible to conceive the legislature carrying out the intent attributed
to them through an unimportant and ambiguous amendment to this
chapter forty-three, (43.) It is equally impossible to believe, in the
absence of language unmistakably bearing such interpretation, that
the legislature intended to restrict trusts in personalty within greatly
narrower lines than those in realty. The political, legal, and social
history of England and the United States is against such an idea.
Yet appellants' construction leads to this result. For we would only
have one trust in personal property against several in real, besides
a wide extension of the right of disposition in trust of land through
the medium of powers. It is, moreover, impossible to reconcile the
retention of this one trust and the abolition of all others. Can any
reason be suggested why a trust to sell personal property for the
benefit of creditors or legatees should be made invalid, when exactly
that trust in land is valid? Can we imagine the legislature intend-
ing to enact a law so without plan or purpose, so void of any ap-
parent benefits, so fraught with the gravest evils to the commercial
world and to those dependent on testamentary dispositions? This
amendment of 1875 can only be construed as declaratory of the com-
mon law.

The existence of the law of charitable uses as to personal property
in this state is still an open question. As already urged, we cannot
regard the amendment of 1875 as affecting the matter one way or
the other. In Wisconsin and Michigan the courts have decided that
the common-law rule prevails, while in New York the contrary is
held. *Dodge* v. *Williams*, 46 Wis. 70; *Penny* v. *Croul*, 76 Mich.
471; *Holland* v. *Alcock*, 108 N. Y. 312.

After the full discussion which the subject has received in these
cases it is unnecessary to repeat here the arguments *pro* and *con.*
But it is to be remarked that the Wisconsin and Michigan cases rest
on safer and more conservative ground, since there has been no ex-
press statutory limitation of trusts in personal property. The New
York statutes prescribe the same period for the lawful suspension of
the absolute ownership of personal property as for the suspension of
the power of alienation of land. As there is no such statute in Min-
nesota, the New York decisions are not in point here.

COLLINS, J. This was an action brought for the purpose of obtaining from the court a construction of a certain trust deed in which plaintiffs were named as grantees, executed and delivered October 1, 1888, by one Richard Martin, since deceased. It is the trust deed mentioned in the codicil to the last will and testament of said Martin, *ante*, p. 31, (51 N. W. Rep. 624.) That action was brought by these plaintiffs, as executors, against these same defendants, as heirs at law and devisees. The deed purports to convey to plaintiffs, as trustees, valuable real property in Hennepin county, Minnesota.

Plaintiffs accepted the trust in writing October 1st of the same year. All of the defendants took part in the trial below, but the Sheltering Arms made no claim adverse or hostile to that of St. Barnabas' Hospital. Both of these institutions were and are located in the city of Minneapolis, in which place Mr. Martin resided for many years during his lifetime, accumulating a handsome fortune. The plaintiffs and St. Barnabas' agreed below, as well as on appeal, each claiming that the deed was valid, either as creating a trust, or a power in trust, and that its provisions were ample and sufficient in respect to St. Barnabas'. St. Luke's Hospital contended along this same line until a certain point was reached, and then declared that the trust or power in trust attempted to be created by the deed was absolutely void as to St. Barnabas', but valid as to St. Luke's. The heirs at law—a common enemy—claimed that the deed was void both as a trust and as a power in trust. The court below, on findings of fact, by its conclusions of law construed the instrument in accordance with the amicable views of plaintiff trustees and defendant St. Barnabas' Hospital.

By the terms of the deed in question the trustees therein named were authorized and directed to perform three distinct acts in relation to the property: *First*, to collect the rents and profits from the same, using the sums collected for the payment of taxes and in paying the expenses of carrying out the trust, any deficiency in respect to these matters being made a charge upon the property; *second*, to sell the land; and, *third*, to pay over the proceeds to one of two beneficiaries then in existence and designated by name ; the rights of

appellant St. Luke's and the power of the trustees to recognize it as the beneficiary, being made to depend upon the inability of the respondent St. Barnabas' to satisfy the trustees, or, to use the words found in the instrument, " to prove " certain things in respect to its permanency to the satisfaction of the trustees. The court below held that the trust attempted to be created by the deed was not one of the express trusts authorized by 1878 G. S. ch. 43, § 11, but that the acts authorized and directed to be performed by the trustees were valid powers in trust, to be exercised and executed in favor of one or the other of the designated beneficiaries, as might be determined by the trustees, in accordance with the terms of the deed; and that the legal estate in the land was by the residuary clause in the last will and testament of Richard Martin, before mentioned, devised to the executors in said will, in trust for the legatees named in said residuary clause, but subject to the execution of the power created by the instrument now being construed. It would seem to be of little consequence whether the trust created by the deed be construed as an express active trust or as a power in trust, for in either case the ultimate result would be the same,—the heirs at law, or the residuary legatees, being deprived of the property. In either event, the construction as to the validity of the provisions of the deed and as to the proper beneficiary would be the same, and on this point these litigants are in harmony. Whatever the construction in this respect, it is argued with much zeal and ability by the counsel for the heirs at law that the deed is invalid, for reasons which will appear as we proceed.

1. It was claimed that by the terms of the deed there was a suspension of the power of alienation of land not measured by the duration of two lives in being at the time of its execution, and hence in contravention of the statute. This claim was founded upon the provisions of the deed whereby the time of sale was prescribed. The period of time within which the trustees should sell was absolutely limited to the ten years next ensuing, and it was further provided that sale should be made "as soon as in the judgment of my said trustees the said lands can be sold for a reasonable price, compared with other lands in the vicinity." This clause was practically the

same as that construed in the will case, the only difference being that under the will the executors were not directly referred to the prices put on other lands in the vicinity, and a comparison with such prices, as a means of ascertaining and fixing a reasonable price for the trust land. But such a reference, or requirement, if it can be so called, added nothing and in no manner affected the condition as to price, already imposed, for such price would unquestionably and necessarily be regulated and determined by reference to and comparison with the prices put upon and for which other lands in the vicinity were sold. A reasonable price at which this land should be sold could only be ascertained in the manner mentioned. For the reasons stated in the opinion in the will case, all being pertinent and forceful here, the power of the trustees to alienate this land and to pass the title in fee to a purchaser was not suspended for any period of time. The power might have been exercised lawfully at once, and it might not be exercised until some future day within the fixed maximum period of time,—ten years next following.

2. It is contended in behalf of the heirs with much plausibility that by the provisions of the deed there has been effected a suspension of the ownership of the proceeds of a sale of land, forbidden by the rule of the common law against perpetuities, and which avoids the instrument. The contention is that by its terms the trustees not only have the power to suspend and postpone indefinitely a designation as between the two beneficiaries named, but that they may postpone and suspend at will the payment over of the proceeds of a sale; that they were directed not to act absolutely, but conditionally only. The contention really goes further, and is that the conditions and contingencies specified in the deed, on the fulfillment and happening of which the trustees were to designate the beneficiary, may never happen, are indefinite in meaning, and impossible of execution. To determine the merits of this claim there must be made a critical, but not captious, examination of the whole deed, that we may discern, if possible, the intent, plan, and purpose of the grantor, bearing in mind that it is the policy of the law not to seek grounds to avoid a conveyance, but to endeavor to uphold it, if it can be done on sound legal construction.

We are not to construe doubtful and ambiguous clauses and expressions so as to bring the disposition of the property within the prohibition of the law against perpetuities, when, without reference to these clauses and expressions, the meaning, intent, and design of the grantor are apparent. We quite agree with the counsel for respondent trustees that the trust is to be supported if it can be done by any reasonable and fair construction of the instrument. Instruments of this nature should be construed as if the rule against suspension did not exist, and only after the meaning has been determined may the rule be applied to learn whether the provisions are valid. And the rule is constantly subordinated to another rule,—that, where there is fair room for two constructions, the instrument should be preserved, rather than defeated.

It is our duty, however, to carefully weigh and consider each objection made to the deed, and to give full effect to any which may be sufficient to render it void in law. By the paragraph numbered 2, and by the very terse sentence which commences paragraph numbered 3 in the deed it is plain that the grantor required a sale to be made as soon as a reasonable price could be obtained for the land, and that in no event should such sale be postponed beyond the expiration of the period of ten years then next ensuing. This provision as to a sale was absolutely "out and out," and, although there was some latitude as to the exact time of sale, it was to take place within ten years in any event. A sale and a payment of the proceeds to one of two beneficiaries named were imperatively commanded. In express terms the deed then directs that the proceeds "should be appropriated" to St. Barnabas if a certain condition of affairs is found to exist with reference to it by the trustees. On the other hand, should this condition of affairs be found not to exist, the appropriation of the proceeds is to St. Luke's. In the use of the somewhat peculiar phrase "shall be appropriated" there is nothing to indicate that it was the plan or purpose of the grantor to have payment deferred or postponed for any period of time whatsoever. In fact, these words suggest an immediate appropriation or application of the proceeds to the use of one of the beneficiaries, which is to be directly ascertained and resolved upon, before or when the pro-

ceeds of sale are in hand.    That the trustees are to determine as to the existence or nonexistence of certain facts does not indicate, necessarily, that there must be a postponement of the use of the gift, any more than it would have been indicated had the trustees been given discretion to elect unqualifiedly as between the beneficiaries. The words in paragraph 3, whereby the trustees are directed to determine the beneficiary, are, in effect, that, if they are satisfied that the churches named will permanently sustain St. Barnabas' as a church hospital, then St. Barnabas' shall be declared the beneficiary, and shall receive the proceeds.    This language calls for and demands immediate affirmative action on the part of the trustees. They are to initiate the inquiry which will lead to a conclusion as to where the gift shall go, and the difficulty of construction which seems to surround the counsel for appellant heirs, and lead them to contend that a determination must necessarily be postponed, and may never be made, arises largely from a misapprehension in respect to the words found in paragraph 3, whereby the grantor provided that, if the churches "shall prove to the satisfaction" of the trustees that they will "permanently sustain" St. Barnabas', then it shall be the beneficiary; otherwise his bounty is to go to St. Luke's.    He did not contemplate, when using the language above quoted, that the churches should be called upon to make "proof" that they were legally authorized and financially able to sustain the hospital for all time to come, but simply that the trustees should be satisfied or convinced that a plan had been devised by which the ability and disposition of the churches to sustain St. Barnabas' in a continuing and lasting manner had been evinced.    An institution of that character which is in a continuing and lasting condition is "permanent" in the ordinary sense of the word.    That the grantor intended nothing more than that his trustees should simply be assured or satisfied of this, and that he did not require or anticipate anything in the nature of judicial inquiry or formal proof of the legal and financial ability of the churches to support the hospital named, is also manifest from the phraseology of paragraph 4, in which he provided that, if the churches of the denomination named, "now or hereafter in the city,    *    *    *    before this trust is fully executed, do

not fully satisfy my aforesaid trustees * * * that they will efficiently support and sustain St. Barnabas',", then the proceeds shall be paid over to St. Luke's. The trustees are to be made satisfied of this, nothing more; and hence could become satisfied by the performance of such acts on the part of the churches or church members as would clearly indicate and convince, not to a legal, but to a moral, certainty, that the hospital would be efficiently and permanently supported and sustained. That this was to be determined before or immediately after the real property was converted into personalty, so that the application and appropriation would be immediately made, is obvious, not only from the general tenor of the instrument, but from expressions other than that in paragraph 3, already commented on. For instance, in the language in paragraph 4, whereby Mr. Martin directs, contingently, a payment of the net proceeds to St. Luke's. If his trustees are not satisfied with the attitude and disposition of the local churches towards St. Barnabas' "before this trust is fully executed," the money is to go to St. Luke's. As the trust would not be fully executed until the trustees had fully and entirely performed their duties and their mission had ended, it is manifest that he meant and referred to a partial execution of the trust,—that is, to the collection of rents and profits, the payment of taxes, the sale of the land, and the ascertainment of the exact sum to be paid over. So that the provision is, substantially, that, if the trustees are not satisfied, when a sale is made, or as soon afterwards as a decision can be reached, with what has been done by the churches which theretofore may have been, or at that time may be, in existence in Minneapolis, in respect to the efficient and permanent support of St. Barnabas', it shall not be declared the beneficiary.

Just what Mr. Martin had in mind when speaking of the proceeds which might remain in the hands of his trustees—the last clause in paragraph 4—seems somewhat doubtful. Possibly he referred to the proceeds to be turned over,—the net proceeds,—which would be the sum realized at a sale plus the rents and profits and minus the amounts paid out for taxes and expenses of the trust. Or he might have contemplated a sale of the lands in parcels, on different days, and that the power of selecting a beneficiary should

continue as to the proceeds by each parcel as the same were dis-
posed of. But there is nothing here to indicate that the selection
and designation of a beneficiary were to be delayed, when the land
was sold as a whole, or in parcels.

3. By counsel for the heirs it is argued at length that as to the
beneficiary there is an uncertainty in the deed, which, as to St.
Barnabas' Hospital, renders it invalid; and, further, that as to the
subject-matter of the trust there is an uncertainty in the instru-
ment, which, as to both St. Barnabas' and St. Luke's, renders it in-
valid. The counsel for the last-named institution heartily indorses
the first of these propositions, but strongly condemns the second.
It has been noticed that in paragraph 3 it is directed that the money
conditionally given to St. Barnabas' is not to be used on build-
ings, but for the support of charity patients therein. This provision
is right in line with the purpose of Mr. Martin, elsewhere indicated
in the deed, of having such steps taken by the churches as would
convince the trustees that the hospital named would be sufficiently
and permanently supported and sustained by the churches before
the money was paid over, because the erection of buildings in which
charity patients could be placed, there to have the benefit of Mr.
Martin's benefaction, would, of itself, go a long way towards satisfy-
ing the trustees of the stability and permanency of the institution.
The contention is, on this point, that charity patients in St. Barna-
bas' Hospital, and not the hospital itself, became the beneficiary un-
der the deed. And, further, that, because such patients are an in-
definite and unascertainable body or class of people, they are in-
capable of taking as beneficiaries, and the trust, as to them, must
fail. However this may be, it is enough to say that St. Barnabas'
Hospital is the beneficiary upon condition, and not such charity pa-
tients as it may receive, shelter, and aid. To it is given the cus-
tody, control, and disposition of the money; the donor thereof merely
indicating his intention to have it used for one of the purposes for
which the institution was established. St. Barnabas' Hospital was
none the less the beneficiary of the money because Mr. Martin spec-
ified that his gift to it should be used in a certain direction, and
that charity patients alone should have the benefit to be derived

from the same. It is legal for a donor to prescribe, by way of limitation, that his gift shall be kept and preserved, so as to subserve a purpose which a donee corporation has been created to promote. To so prescribe is nothing more than to declare that the trust funds shall be devoted to the objects which the legislature had in view when providing for the existence of the corporation. *Fosdick* v. *Town of Hempstead,* 125 N. Y. 581, (26 N. E. Rep. 801.)

Authority is conferred upon corporations of the character of St. Barnabas' by 1878 G. S. ch. 34, § 174, to acquire property by gift, but they are prohibited in the same section from diverting such gift from the specific purpose designated by the donor. The claim that an indefinable, unascertainable beneficiary, described as the "charity patients of St. Barnabas'," was named in the deed, is without foundation.

The argument of counsel for the heirs that the deed is invalid, because uncertain as to the subject-matter of the trust, is, in part, based upon that clause in the instrument which directs that the rents and profits derived from the land shall be applied to the payment of taxes and the expenses of conducting the trust, a deficiency, if any, being made a charge upon the property itself, and in part upon the somewhat ambiguous clause wherein Mr. Martin referred to any portion of the proceeds which might remain in the hands of his trustees. Undoubtedly the declaration of a trust must be reasonably certain in its material terms, and this requisite of certainty includes the subject-matter or property embraced within the trust, the beneficiaries or persons in whose behalf it is created, the nature and quantity of interest which they are to have, and the manner in which the trust is to be performed. In substance this is the law as stated in 2 Pom. Eq. Jur. § 1009. But from an examination of the instrument in question it is evident that the entire proceeds which should come to the trustees, whether as rents or profits or from a sale of a certain described tract of land, were to be paid over to one of two designated beneficiaries, less such sums as might be required for the payment of taxes and the expenses of the trust. The exact sum which should go to one or

the other of the two institutions could not be ascertained in advance or foretold; but this did not render the subject-matter of the trust uncertain. There was no question but that the beneficiary would take all of the fund, and become the legal owner of it. The precise amount of money which it might thus acquire could not be told at any time before the same was ready to be paid over, for it depended upon circumstances, and that is always the case where there has been a valid trust created for the sale of property. But the subject-matter—the nature and quantity of the interest which should be acquired by the designated beneficiary—was at rest. In this respect the case is wholly different from *Prichard* v. *Thompson*, 95 N. Y. 81, and *Tilden* v. *Greene*, 54 Hun, 231, (7 N. Y. Supp. 382.)

4. It is further asserted, and at great length argued, by counsel for the heirs that the conditions upon which the trust is to be executed are indefinite and uncertain, and that the trust is undefined. And, further, that the provisions of the deed are so vague, indefinite, and uncertain as to be incapable of enforcement by judicial decree, therefore invalid. So far as it seems advisable for the safety of his client as a beneficiary contingently, counsel for St. Luke's Hospital holds the same views. Much that has heretofore been said has a bearing upon and can be applied to these assertions. The respondents regard the instrument as creating a general power in trust for the benefit of two designated beneficiaries, with a valid discretionary power in the trustees of selecting between them.

Under our statute--1878 G. S. ch. 44, § 25,—a trust power does not cease to be imperative, where the grantee has been given the right to select as between the persons designated as the objects of the trust, so that the power now being considered would have been valid beyond doubt had the trustees been given unlimited discretion as between St. Barnabas' and St. Luke's,—simply directed to pay the proceeds to the hospital which, in their judgment, was best entitled or most deserving. *Power* v. *Cassidy*, 79 N. Y. 602. Instead of investing the trustees with uncontrolled discretion as between the two, Mr. Martin

imposed a condition, as to St. Barnabas', requiring that the trustees should be guided and governed by the situation and circumstances prior to or as soon after the sale as a decision could be reached.

If they were satisfied that St. Barnabas' was so situated and circumstanced as to assure its permanency as a church hospital, then the entire proceeds were to be awarded to it. If the prescribed condition of permanency was found not to exist to the satisfaction of the trustees, St. Luke's became the beneficiary absolutely. There was a discretion to be exercised, as is usually the case where a trust relation is created. But it was as to but one of the contemplated beneficiaries, not as to the other, and a rule or guide was furnished for the exercise of this discretionary power. If anything, it was less difficult to exercise this power than it would have been had the trustees been required to compare the claims and merits of each, and decide as between them; for the limits of the discretionary power were not only circumscribed, but well defined. We see no reason why the provisions of the trust deed and the duties of the grantees therein could not be enforced by judicial decree, for it seems manifest that a designated beneficiary, entitled to compel the exercise of a power for its benefit, is not lacking; there is a distinct trust fund, the source of which is arbitrarily fixed, and the amount sure to be ascertained; and, in our opinion, there is no want of certainty as to the manner in which the trust is to be performed. While the authorities seem to be at variance, and frequently confusing, an examination of a few, which we cite out of a much larger number, will demonstrate that much more indefinite and uncertain powers than those found in the Martin deed have been upheld by the courts. *Ould* v. *Washington Hospital for Foundlings,* 95 U. S. 303; *Quinn* v. *Shields,* 62 Iowa, 129, (17 N. W. Rep. 437;) *Dodge* v. *Williams,* 46 Wis. 70, (1 N. W. Rep. 92, 50 N. W. Rep. 1103;) *Fadness* v. *Braunborg,* 73 Wis. 257, (41 N. W. Rep. 84;) *Loring* v. *Blake,* 98 Mass. 253; *Lorings* v. *Marsh,* 6 Wall. 337; *White* v. *Ditson,* 140 Mass. 354, (4 N. E. Rep. 606;) *Lyman* v. *Parsons,* 26 Conn. 493; *Miller* v. *Teachout,* 24 Ohio St. 525; *Delany* v. *Delany,* L. R. Irish 15 Ch. Div. 55.

The much-discussed and very recent case of *Tilden* v. *Green,* 130 N. Y. 29, (28 N. E. Rep. 880,) has brought forth comment from the

counsel herein, each seeming to extract comfort from the controlling opinion of the court. The conclusion, reached by a bare majority of the learned justices, was that the selection of the objects of the trust was delegated absolutely to the trustees, and that there was no person or corporation who could demand any part of the estate, or maintain an action to compel the trustees to execute the power in their favor. To quote: "This is the fatal defect in the will. The will of the trustees is made controlling, and not the will of the testator. * * * As was said by the learned presiding justice of the general term: 'The radical vice of the entire provision (the thirty-fifth article) seems to have arisen from the testator's unwillingness to confer any enforceable rights upon any qualified person or body.'" 54 Hun, 231, (7 N. Y. Supp. 393.) The case at bar is radically different upon the point wherein the *Tilden* will was declared fatally defective.

5. As to the sixth point made in the brief of counsel for the heirs, we are of the opinion that 1878 G. S. ch. 43, § 11, subd. 5, *supra*, has no bearing upon the questions now before us.

6. The testimony has been carefully examined in connection with the assignments of error relating to the same. None of the assignments were well taken, and none need special consideration.

Order affirmed.

MITCHELL, J., absent, sick, took no part.

(Opinion published 51 N. W. Rep. 629.)

---

#### APPLICATION TO TAX COSTS.

VANDERBURGH, J. This action, which is brought for the construction of a certain deed conveying lands to the plaintiffs in trust for certain purposes, and also another action brought against the same defendants, except the St. Luke's Hospital, for the construction of the will of Richard Martin, deceased, were determined in the district court adversely to the defendants Anna S. Russell *et al.*, heirs at law, and the St. Luke's Hospital, and in favor of the claims of the plaintiffs, and of the defendants St. Barnabas' Hospital and the Sheltering Arms.

On appeal to this court, the decisions of the district court were affirmed. The nature of the issues will more fully appear in the foregoing statements and decisions on such appeals.

Certain questions are now brought before us in relation to the allowance of costs in this court. Separate appeals were brought by the defendants Russell and others, heirs at law, and by the St. Luke's Hospital, and in each the notice of appeal was served upon the plaintiffs, and upon the defendants St. Barnabas' Hospital and the Sheltering Arms. This was the correct practice, and was necessary in order to secure a final determination of the hostile claims of the defendants as between themselves. The plaintiffs and the corporations last named are the respondents and the prevailing parties in this court, and the other defendants are the defeated or unsuccessful parties.

The authority of this court to award costs is regulated and limited by the statute, and the court has no equitable or discretionary power other than the statute confers. *Downing* v. *Marshall,* 37 N. Y. 387.

The statutory provisions are that the prevailing party be allowed his disbursements necessarily paid or incurred, and in addition thereto an amount as costs not exceeding the statutory limit, in the discretion of the court. 1878 G. S. ch. 67, § 16 *et seq.*

Under the statutes of New York, in certain actions the court may order extra allowances as costs, and in equity cases discretion is given to allow or apportion the costs as may be just, within the statutory limit as to the amount. Beyond this the courts recognize no chancery powers to add allowances for counsel fees. And the same rule governs in actions for the construction of wills. *Downing* v. *Marshall, supra.*

Allowances to trustees for their expenses in suits rest upon a different principle.

It is, however, the practice in that and some other states to direct the taxable costs of all the parties in such actions to be paid out of the estate.

But that rule is not applicable here, under the strict language of the statute we have referred to.

This court has no power to grant costs to the defeated party, nor to relieve him from the payment of the costs allowed to the prevailing party, except in the exercise of the discretion which the statute allows. In the case at bar we think no statutory costs should be allowed in favor of or against any of the parties. But under the statute the disbursements of the prevailing parties must be taxed and allowed according to the usual course and practice in this court, to be taxed against the defendants Russell and others and the defendant St. Luke's Hospital, in proportion as the same may have been incurred in each of the respective appeals.

(Opinion published 52 N. W. Rep. 26.)